# EXHIBIT A

COMMONWEALTH OF MASSACHUSETTS

**1**

SUFFOLK, ss.

SUPERIOR COURT
DEPARTMENT OF THE TRIAL COURT
CA No. *16 . 3640 H*

JOSEPH NASTA, on behalf of himself and
all others similarly situated,

     Plaintiff,

     vs.

FORD MOTOR COMPANY,

     Defendant.

MICHAEL JOSEPH DONOVAN
CLERK/MAGISTRATE

2016 NOV 25  P 1: 36

SUFFOLK SUPERIOR COURT
CIVIL CLERK'S OFFICE

## PLAINTIFF'S CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

### PRELIMINARY STATEMENT

Plaintiff, Joseph Nasta, ("Nasta" or "Plaintiff") alleges that Defendant, Ford Motor Company, ("Ford" or "Defendant")[1] violated Massachusetts law and harmed consumers who purchased new Ford Explorers from Ford authorized dealerships.  More precisely, Nasta alleges that Ford sold Nasta a Ford Explorer which contained undisclosed manufacturing defects which substantially impaired the value of his vehicle and which Nasta did not bargain for in the transaction.  Moreover, Nasta alleges that Ford previously knew of the manufacturing defects, and yet refused to notify consumers, or Ford representatives, that that the defects exist in their vehicles.  Ford's unlawful behavior as described herein have caused harm to Nasta and numerous consumers throughout the Commonwealth.  Nasta brings this action on behalf of himself and all other persons similarly situated.

---

[1] For the purposes of this complaint, the term Ford means Ford Motor Company, its agents, subsidiaries, authorized dealers and assigns.

## PARTIES

1. Joseph Nasta is an individual who at all times relevant hereto has resided/resides in Essex County, Massachusetts.

2. Ford Motor Company, is a foreign corporation organized under the laws of the State of Michigan, maintaining a principal place of business in Dearborn, Michigan.   Ford has a registered agent in the Commonwealth located at 155 Federal Street, Suite 700, Boston, Massachusetts. At all times relevant hereto, Ford was in the business of manufacturing and selling automobiles to consumers throughout the Commonwealth through its authorized Ford dealerships.

## JURISDICTION AND VENUE

3. This Court has personal jurisdiction over Ford by virtue of its registered agent in Massachusetts and by virtue of its transactions, marketing, advertising and/or conducting trade/business throughout the Commonwealth at all times relevant hereto.

4. Upon information and belief, this Court has jurisdiction over the claims contained herein as they relate to Nasta and the putative class because the claims for damages exceed twenty-five thousand dollars ($25,000.00).

5. Venue in this matter is proper as Ford maintains a registered agent in Suffolk County, Massachusetts.

## FACTUAL ALLEGATIONS

6. On March 28 2016, Nasta, purchased, through a Ford authorized dealer, a new 2016 Ford Explorer Platinum 4DR Wagon (VIN #1FM5K8HT6GGC52443) (the "Vehicle"). See, **Exhibit A** (*Contract*).

7. The purchase price of Nasta's Vehicle was approximately $52,053.03.  See, **Exhibit B** (*Invoice*).

8. The Vehicle Nasta purchased had manufacturing variances or dents in all four of the doors

("Defects").

9.  Ford made express and/or implied warranties regarding the Vehicle it sold Nasta ("Warranties").

10. The express and/or implied warranties regarding the Vehicle it sold Nasta constitute a contract.

11. Ford warrants that it will repair or replace all Explorers which contain manufacturing defects.

12. Ford is a party to the Contract.

13. Nasta contracted to purchase a Vehicle without Defects.

14. Nasta's Vehicle was to be provided in new condition.

15. Nasta's Vehicle was to be provided without manufacturing Defects.

16. Nasta's Vehicle was to be provided without Defects to all four doors.

17. Nasta agreed to pay for a Vehicle without Defects.

18. Nasta received the Vehicle with Defects.

19. The Defects in the Vehicle were caused by Ford's manufacturing process.  See, **Exhibit C**, p.1 (*Response to Nasta's M.G.L. c. 93A Demand*).

20. Upon receiving the Vehicle and learning of the Defects Nasta contacted Ford.

21. Nasta requested that Ford repair or replace the doors of his Vehicle.

22. Ford took photos of the Defects in Nasta's Vehicle.

23. Ford's agent took photos of the Defects in Nasta's Vehicle.

24. Ford determined that the Defects were covered by an express warranty which covered Nasta's Vehicle.  See, **Exhibit D** (*Communication from Shane Smith, dated August 9, 2016*) ("…I pressed Ford for an approval to replace to the doors.  On May 20th I did get the approval."); see also, **Exhibit E** (*Prior Approval Dealer Update, dated June 01, 2016*) ("As these concerns are not related to obvious damage, the Front and Rear Doors (base part #ENTRE) are warrantable under the New Vehicle Warranty.").

25. Ford attempted to remedy the Defects to the Vehicle by providing doors with similar Defects.

26. The Ford authorized dealership mechanic refused to repair the Vehicle because the replacement doors provided by Ford had the same Defects.

27. After providing replacement doors with similar Defects, Ford refused to offer any other remedy.

28. Ford continues to refuse to repair or remedy the Defects to the Vehicle.

29. Based upon Ford's refusal to remedy the Defects to the Vehicle, Nasta has sought private estimates for repair.

30. The estimated cost to replace Nasta's doors is approximately $8,992.93.  See, **Exhibit F** (*Preliminary Estimate dated August 23, 2016*).

31. Nasta's Vehicle is worth approximately $8,992.93 less than the price he paid under the Contract.

32. Ford mispresented the value of the Vehicle.

33. Ford's agent mispresented the value of the Vehicle.

34. Ford misrepresented that the Vehicle would be provided free of manufacturers Defects.

35. Ford's agent misrepresented that the Vehicle would be provided free of manufacturers Defects.

36. Ford represented that the Vehicle's Defects would be repaired or replaced under the Warranty.

37. Ford's Agent represented that the Vehicle's Defects would be repaired or replaced under the Warranty.

38. Upon information and belief, Ford represented to Class Members that the Defects contained therein would be repaired or replaced under the respective warranties.

39. Upon information and belief, Ford was required to repair the Defects to Class Members vehicles.

40. Ford and/or its authorized dealers did not affect such repairs to Nasta's Vehicle as were necessary to conform to the Vehicle's warranty.

41. Ford and/or its authorized dealers did not affect such repairs to Nasta's Vehicle as were necessary to return it to its full value.

42. Ford refused to accept the return of Nasta's Vehicle.

43. Ford refused to refund Nasta the full contract price for his Vehicle.

44. Similar Defects exist in numerous 2014 Ford Explorers vehicles.

45. Similar Defects exist in numerous 2015 Ford Explorers vehicles.

46. Similar Defects exist in numerous 2016 Ford Explorers vehicles.

47. The Defects substantially impair the value of Nasta's Vehicle.

48. The Defects substantially impair the value of numerous 2014 Ford Explorers vehicles.

49. The Defects substantially impair the value of numerous 2015 Ford Explorers vehicles.

50. The Defects substantially impair the value of numerous 2016 Ford Explorers vehicles.

51. Ford knew, or should have known, of the Defects prior to selling Nasta his Vehicle. See, **Exhibit C** ("[T]hat is the way 2016 Ford Explorers are built.").

52. The Defects were known to Ford prior to Nasta's purchase of the Vehicle.

53. The manufacturing variances/Defects were known to Ford prior to Nasta's purchase of the Vehicle.

54. Ford knew that the doors of 2016 Ford Explorers possess manufacturing variances/Defects.

55. On or about March 28, 2016, Ford knew that Nasta purchased a Ford Explorer.

56. On or about March 28, 2016, Ford knew that Nasta purchased a Ford Explorer which possessed Defects.

57. Ford did not give prompt written notice of the Defects to Ford's distributors.

58. Ford did not give prompt written notice of the Defects to Ford's zone offices.

59. Ford did not give prompt written notice of the Defects to Ford's authorized dealers and other representatives.

60. Ford did not give prompt written notice of the Defects to Nasta.

61. Ford did not give prompt written notice of the Defects to Class Members as defined herein.

62. Ford did not notify Nasta of the Defects prior to him buying his Vehicle.

63. Ford did not notify Nasta of the Defects after he purchased the Vehicle.

64. Ford did not notify Nasta of the manufacturing variances/Defects prior to him buying his Vehicle.

65. Ford did not notify Nasta of the manufacturing variances/Defects prior to him buying his Vehicle.

66. Ford did not provide Nasta with an Explorer that conformed with its express warranties.

67. Ford did not provide the Class with Explorers that conformed with the express warranties.

68. Ford did not provide Nasta with an Explorer that conformed with its implied warranties.

69. Ford did not provide the Class with Explorers that conformed with the implied warranties.

70. Ford is not willing and/or able to repair Nasta's Vehicle.

71. Ford is not willing to replace Nasta's Vehicle.

72. Ford is not willing to remedy the Defects on Nasta's Vehicle.

73. On or about August 20, 2016, Nasta, through counsel, served Ford with a class-wide M.G.L. c. 93A Consumer Protection Act Demand. See, **Exhibit G** (*Nasta's Class-Wide M.G.L. c. 93A Demand*).

74. On or about November 2, 2016, Ford, through counsel, responded to Nasta's Consumer Protection Act Demand. See, **Exhibit C.**

75. Ford refused to make any offer of settlement to Nasta in its response to Nasta's Consumer Protection Act Demand. See, **Exhibit C.**

76. Ford refused to make any offer of settlement to Class members in its response to Nasta's Consumer Protection Act Demand. See, **Exhibit C.**

77. Ford's M.G.L. c. 93A demand response was unreasonable.

78. At all times relevant hereto, Ford was engaged in trade and commerce as defined by M.G.L. c. 93A.

79. As a result of Ford's acts and practices set forth herein, Nasta and members of the Class have suffered financial harm, including but not limited to, harm equal to the amounts Ford charged Nasta and the Class

and the lesser amount that Nasta and Class's vehicles are actually worth.

## CLASS ALLEGATIONS

80. Nasta repeats and re-alleges the allegations set forth above.

81. Nasta brings this action on behalf of himself and a class of other persons similarly situated pursuant to

Mass. R. Civ. P. 23 and M.G.L. c. 93A.

82. The class ("Class") consists of:

   A. All Massachusetts residents who purchased a new 2014, 2015, or 2016 Ford
      Explorer from an authorized Ford dealership which contained manufacturing
      variances or Defects to the vehicle's doors; and/or

   B. All individuals defined in (A) above who were not notified of the manufacturing variances or
      Defects.

83. The members of the Class are so numerous that joinder of all members would be impracticable.

84. Common issues of fact and law predominate over any issues peculiar to individual class members.

The principal common issues are:

   A. Whether Ford or its Agents overcharged for Ford Explorer's with the variance or Defects

      set forth herein;

   B. Whether the manufacturing variances or Defects substantially impair the value of Nasta

      and Class Members' Ford Explorers;

   C. Whether Ford knew of the manufacturing variances or Defects prior to selling Nasta and

      the Class their Ford Explorers;

   D. Whether Ford delivered vehicles to Nasta and the Class which were worth less than the

      vehicles for which they contracted;

   E. Whether the Ford Explorers sold to Nasta and the Class conform to the express warranties;

   F. Whether the Ford Explorers sold to Nasta and the Class conform to the implied warranties;

   G. Whether Ford misrepresented the condition of the Ford Explorers sold to Class Members;

H.   Whether Ford misrepresented the value of the Ford Explorers sold to Class Members;

I.   Whether Ford was required to notify Nasta and Class Members of the variance and Defects described herein;

J.   Whether Ford was required to take remedial steps to address the variances and Defects described herein;

K.   Whether Ford engages in trade or commerce in Massachusetts;

L.   Whether Ford conduct violated: M.G.L. c. 90, § 7N ½(2); M.G.L. c. 90, § 7N ½(3); 940 CMR 5.03(5); and/or 940 CMR 3.16.

M.   Whether Ford's conduct was committed willfully, knowingly and/or in bad faith.

85. Nasta's claim is typical of the claims of the Class as all claims are based on the same legal theory, and all arise from the same course of conduct.

86. Nasta will fairly and adequately protect the interests of all class members and is committed to a vigorous and successful prosecution of this action,

87. Nasta has retained counsel experienced in the litigation of consumer rights cases, including consumer class actions.  Neither Nasta nor counsel have any interest or conflict that might cause them to not vigorously pursue this action.

88. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since:

A. The financial harm suffered by individual class members is such that it would be economically unfeasible for them to individually litigate their claims;

B. The factual and legal issues common to all class members far outweigh any individual questions;

C. The prosecution of separate lawsuits by individual class members would entail the risk of

inconsistent and conflicting adjudications; and

D. There will be no unusual or extraordinary management difficulties in administering this case as a class action.

## COUNT I
## BREACH OF CONTRACT

89. Nasta repeats and re-alleges the allegations set forth above.

90. Nasta entered into an agreement with Ford for a new 2016 Ford Explorer.

91. The Contract Nasta and Ford entered into was for the purchase of a new 2016 Ford Explorer free from Defects.

92. The Contract Nasta and Ford entered into was for the purchase of the Vehicle.

93. Nasta paid valuable consideration for his Vehicle.

94. Ford did not provide Nasta with a Ford Explorer which was free of Defects.

95. Nasta met all of his obligations under the Contract.

96. Ford breached the Contract with Nasta.

97. Ford has entered into numerous other contracts with Class Members for the purchase of a new Ford Explorers free from Defects.

98. The contracts that Ford and Class Members entered into were for the purchase of new vehicles.

99. Class Members paid valuable consideration for their vehicles.

100. Ford did not provide Class Members with Ford Explorers which were free of Defects.

101. Class Members have met all of their obligations under their respective contracts.

102. Ford breached its contracts with Class Members.

103. Nasta and the Class have suffered damages as a result of Ford's breach of contract.

104. Nasta and the Class have suffered damages as a result of Ford's breach of contract, including but not limited to, the diminished value of their respective Ford Explorers.

105. Nasta and the Class have suffered damages as a result of Ford's breach of contract, including but not limited to, not receiving the benefit of the bargain offered.

**WHEREFORE**, Nasta respectfully requests that this Court enter judgment against Ford for its breaches of contract and award damages to adequately compensate Nasta and members of the Class. Nasta also requests that the Court order Ford to cease and desist the practices complained of herein, and that the Court award damages, court costs and attorneys' fees.

## COUNT II
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

106. Nasta repeats and re-alleges the allegations set forth above.

107. Ford had a duty to comply with the covenant of good faith and fair dealing when dealing with Nata with regard to the purchase of his Vehicle.

108. Ford breached the covenant of good faith and fair dealing by providing the Vehicle with Defects.

109. Ford breached the covenant of good faith and fair dealing by refusing to repair Nasta's Vehicle.

110. Ford breached the covenant of good faith and fair dealing by refusing to remedy the Defects in Nasta's Vehicle.

111. Ford breached the covenant of good faith and fair dealing by refusing to notify Nasta of the Vehicle's Defects.

112. Ford breached the covenant of good faith and fair dealing by failing to inform Nasta that his Vehicle would be provided with Defects.

113. Ford had a duty to comply with the covenant of good faith and fair dealing when dealing with Class Members with regard to the purchase of their Ford Explorers.

114. Ford breached the covenant of good faith and fair dealing by providing Class Members' vehicles with Defects.

115. Ford breached the covenant of good faith and fair dealing by refusing to notify Class Members of

their vehicles Defects.

116. Ford breached the covenant of good faith and fair dealing by failing to proactively address and
remedy the Defects in Class Members' vehicles.

117. Ford breached the covenant of good faith and fair dealing by failing to inform Class Members
that their vehicles would be provided with Defects.

118. Nasta and the Class have suffered damages as a result of Ford's breach of the covenant of good
faith and fair dealing.

119. Nasta and the Class have suffered damages as a result of Ford's breach of the covenant of good
faith and fair dealing, including but not limited to, the diminished value of their respective Ford
Explorers.

120. Nasta and the Class have suffered damages as a result of Ford's breach of the covenant of good
faith and fair dealing, including but not limited to, not receiving the benefit of the bargain
offered.

   **WHEREFORE**, Nasta respectfully requests that this Court enter judgment against Ford
for its breaches of the covenant of good faith and fair dealing and award damages to adequately
compensate Nasta and members of the Class. Nasta also requests that the Court order Ford to cease
and desist the practices complained of herein, and that the Court award damages, court costs and
attorneys' fees.

**COUNT III**
**VIOLATION OF M.G.L. c. 93A, § 2**

121. Nasta repeats and re-alleges the allegations set forth above.

122. The acts and practices described above constitute general unfair and/or deceptive acts in
violation of M.G.L. c. 93A.

123. The acts and practices described above caused Nasta and the Class to suffer distinct harm separate from the violation of M.G.L. c. 93A.

124. Nasta and the Class have suffered damages as a result of Ford's general unfair and deceptive practices, including but not limited to, overpaying for their vehicles, deprecation in their vehicle's value and/or non-pecuniary damages.

WHEREFORE, Nasta respectfully requests that this Court enter judgment against Ford for its violations of M.G.L. c. 93A,§ 2 and award damages to adequately compensate Nasta and members of the Class. Nasta also requests that the Court order Ford to cease and desist the practices complained of herein, and that the Court award multiple damages, court costs and attorneys' fees.

### COUNT IV
### VIOLATIONS OF M.G.L. c. 93A, § 2
### (For violation of M.G.L. c. 90, § 7N ½)

125. Nasta repeats and re-alleges the allegations set forth above.

126. M.G.L. c. 90, § 7N ½(2) states:

> If a motor vehicle does not conform to any applicable express or implied warranty, and the consumer reports the nonconformity to the manufacturer of the vehicle, its agent or its authorized dealer during the term of protection, the manufacturer, its agent or its authorized dealer shall effect such repairs as are necessary to conform the vehicle to such warranty.

127. Nasta's Vehicle included express or implied warranties which warranted it would be free from Defects.

128. Nasta's Vehicle did not conform to the express or implied warranties Ford represented.

129. Ford refused to effect such repairs as are necessary to conform the Vehicle to the express or implied warranties.

130. Class Members' vehicles included express or implied warranties which warranted they would be free from Defects.

131. Class Members' vehicles did not conform to the express or implied warranties Ford represented.

132. Ford refused to effect such repairs as are necessary to conform Class Members' vehicles to the express or implied warranties.

133. As result of attempts made to correct the nonconformity of the express or implied warranty Nasta's Vehicle was out of service by reason of repair of any nonconformity for a cumulative total of fifteen or more business days during the term of protection provided.

134. M.G.L. c. 90, § 7N ½(3) states, in pertinent part:

> If the manufacturer, its agent or authorized dealer does not conform the motor vehicle to any such applicable express or implied warranty by curing any nonconformity after a reasonable number of attempts, the manufacturer shall accept return of the vehicle from the consumer. ...

135. Nasta made reasonable number of attempts to correct the nonconformity of the express or implied warranty.

136. After making several attempts to correct the nonconformity of the express or implied warranty, Ford refused to accept return of the vehicle from Nasta.

137. Nasta's Consumer Protection Act Demand constitutes a reasonable attempt to correct the nonconformity of the express or implied warranty of Class Members' vehicles.

138. After Nata made an attempt to correct the nonconformity of the express or implied warranty of Class Members' vehicles, Ford refused to accept return of the Vehicle from Nasta.

139. The Defects described herein substantially impair the market value of the Ford Explorers of Nasta and Class Members.

140. The Defects described herein are not the result of owner negligence, damage caused by accident, vandalism, or attempt to repair the vehicle by a person other than the manufacturer, its agent or authorized dealer.

141. The Defects described herein are not the result of any attempt substantially to modify the vehicle which was not authorized by the manufacturer.

142. M.G.L. c. 90, § 7N ½ is a statute meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection.

143. 940 CMR 3.16(3) states:

> Without limiting the scope of any other rule, regulation or statute, an act or practice is a violation of M.G.L. c.93A, § 2 if: (3) It fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection.

144. A violation of M.G.L. c. 90, § 7N ½ constitutes a violation of 940 CMR 3.16(3).

145. Ford's violations of M.G.L. c. 90, § 7N ½ occurred within the scope of trade and commerce.

146. Ford's violations of M.G.L. c. 90, § 7N ½ constitute violations of M.G.L. c. 93A, § 2.

147. Ford's failure to comply with the mandates of M.G.L. c. 90, § 7N ½ caused Nasta and members of the Class damages.

148. Nasta and members of the Class have suffered damages as a result of Ford failure to comply with M.G.L. c. 90, § 7N ½, including, but not limited to, financial detriment.

149. Nasta and the Class have suffered damages as a result of Ford's violations of M.G.L. c. 90, § 7N ½, including but not limited to, the diminished value of their respective Ford Explorers.

150. Nasta and the Class have suffered damages as a result of Ford's violations of M.G.L. c. 90, § 7N ½, including but not limited to, not receiving the benefit of the bargain offered.

**WHEREFORE**, Nasta respectfully requests that this Court enter judgment against Ford for its violations of M.G.L. c. 90, § 7N ½; 940 CMR 3.16; and M.G.L. c. 93A, § 2 and award damages to adequately compensate Nasta and members of the Class. Nasta also requests that the

Court order Ford to cease and desist the practices complained of herein, and that the Court award

multiple damages, court costs and attorneys' fees.

## COUNT V
## VIOLATION OF M.G.L. c. 93A, § 2
## (For violation of 940 CMR 5.03(5))

151. Nasta repeats and re-alleges the allegations set forth above.

152. At all times relevant hereto, Ford was engaged in trade and commerce as defined by M.G.L. c.

93A.

153. 940 CMR 5.03(5) states:

It is an unfair or deceptive act or practice for a manufacturer to fail to give prompt written notice of any defect in motor vehicles manufactured by it to its distributors, zone offices, dealers and other representatives, as well as to the purchasers or owners of such vehicles who are known to the manufacturer. Such written notice shall contain the following information:

(a) A clear description of such defect and the identity of the model or class of vehicles in which such defect occurs;
(b) An evaluation of the risk of accident, impairment of operation or performance or impairment of value of the vehicle reasonably related to such defect;
(c) A statement of the measures to be taken to obtain remedy of such defect; and
(d) Whether the cost of such remedy or any part thereof will be borne by the manufacturer.

154. Ford was required to give prompt written notice to Nasta of the Defects described herein in

accordance with the mandates of 940 CMR 5.03(5).

155. Ford was required to give prompt written notice to Class Members of the Defects described herein

in accordance with the mandates of 940 CMR 5.03(5).

156. Ford failed to give prompt written notice to Nasta of the Defects described herein in accordance

with the mandates of 940 CMR 5.03(5).

157. Ford failed to give prompt written notice to Class Members of the Defects described herein in

accordance with the mandates of 940 CMR 5.03(5).

158. A violation of 940 CMR 5.03(5) constitutes a violation of M.G.L. c. 93A, § 2.

159. Ford's failure to give prompt written notice of the Defect to Nasta and the Class caused Nasta and the class to suffer damages.

160. Ford's failure to give prompt written notice of the Defect to Nasta and the Class caused Nasta and the Class to suffer harm, including but not limited to, financial detriment.

161. As a result of Ford's failure to give prompt notice of the Defect to Nasta and the Class, Ford caused Nasta and the Class to overpay for the purchase of their Ford Explorers.

162. As a result of Ford's failure to give prompt notice of the Defect to Nasta and the Class, Ford caused Nasta and the Class to suffer damages, including owning vehicles with diminished value.

**WHEREFORE**, Nasta respectfully requests that this Court enter judgment against Ford for its violations of 940 CMR 5.03(5) and M.G.L. c. 93A, § 2 and award damages to adequately compensate Nasta and members of the Class. Nasta also requests that the Court order Ford to cease and desist the practices complained of herein, and that the Court award multiple damages, court costs and attorneys' fees.

## COUNT VI
## MISREPRESENTATION

163. Nasta repeats and re-alleges the allegations set forth above.

164. Ford offered to sell Ford Explorers to Nasta and the Class without Defects.

165. Ford misrepresented that Nasta's Vehicle and the vehicles of the Class would be provided free of manufacturer Defects.

166. Ford misrepresented the value of the Vehicle and the value of the vehicles of the Class.

167. Ford misrepresented that the Defects contained in Nasta's Vehicle and the vehicles of the Class would be repaired or replaced.

168. Nasta relied upon the representations made by Ford.

169. Upon information and belief, the Class relied upon the representations made by Ford.

170. As a result of Ford's omissions/misrepresentations as set forth herein Nasta entered into the Contract.

171. Upon information and belief, as a result of Ford's omissions/misrepresentations as set forth herein the Class entered into their Contracts with Ford.

172. Ford financially benefited from Nasta's Contract with Ford.

173. Ford financially benefited from the Class's Contract with Ford.

174. As a result of Defendants' omissions/misrepresentations, Nasta and Class Members have suffered financial harm, including but not limited to, the inability to realize and receive the full value of their vehicles to which they were entitled, as well as the reduced value or fully extinguished value, of the vehicles.

WHEREFORE, Nasta respectfully requests that this Court enter judgment against Defendants for general misrepresentation and award damages to adequately compensate Nasta and members of the Class. Nasta also requests that the Court order Defendants cease and desist the practices complained of herein, and that the Court award damages, court costs and attorneys' fees.

## COUNT VI
## DECLARATORY JUDGMENT

175. Nasta repeats and re-alleges the allegations set forth above.

176. There exists an actual controversy as to whether the Defects described herein substantially impair the market value of the Ford Explorers of Nasta and Class Members.

177. There exists an actual controversy as to whether the Defects described herein diminish the market value of the Ford Explorers of Nasta and Class Members.

178. There exists an actual controversy as to whether Ford violated the statutes and regulations set forth herein, as well as common law, when Ford failed to provide Nasta and the Class with vehicles which were free from defects.

179. There exists an actual controversy as to whether Ford was required to remedy the Defects to Nata and Class Members' vehicles.

180. There exists an actual controversy as to whether Ford was required to notify Nasta and Class Members of the Defects as required by 940 CMR 5.05.

181. Nasta and the Class are entitled to a declaration as to what relief, if any, they are entitled to in consideration of Ford's acts and omissions as outlined above.

182. Nasta and the Class are entitled to a declaration that Ford's acts and omissions as set forth herein constitute violations of:  M.G.L. c. 90, § 7N ½(2); M.G.L. c. 90, § 7N ½(3); 940 CMR 5.03(5); 940 CMR 3.16; and/or M.G.L. c. 93A, § 2.

183. Nasta and the Class are entitled to a declaration that the acts and omissions as set forth herein were committed willfully, knowingly and/or in bad faith.

WHEREFORE, Nasta respectfully requests that this Court declare that Ford violated Massachusetts law for its failure to provide Nasta and the Class with vehicles which were free from defects and its failure to notify Nasta and the Class of the defects and award damages to adequately compensate Nasta and members of the Class. Nasta also requests that the Court order Ford to cease and desist the practices complained of herein, and that the Court award damages, court costs and attorneys' fees.

### PRAYERS FOR RELIEF

WHEREFORE, Nasta, on behalf of himself and all others similarly situated, demand judgment against Ford as follows:

A. An order determining that this action is a proper class action and certifying Nasta as representative of the putative class;

B.  An order appointing Nasta's counsel as competent legal representatives of the putative class in this action;

C.  An order determining that the acts and practices of Ford described herein were/are violations of M.G.L. c. 90, § 7N ½; 940 CMR 5.03(5); 940 CMR 3.16; and/or M.G.L. c. 93A, § 2;

D.  An order determining that the acts and practices of Ford described herein were/are breaches of contract;

E.  An order determining that the acts and practices of Ford described herein were/are breaches of the covenant of good faith and fair dealing;

F.  An order determining that the acts and practices of Ford described herein violated the common-law principal of misrepresentation;

G.  An order determining that the acts and practices of Ford described herein were committed willfully, knowingly and/or in bad faith.

H.  An order issuing declaratory judgment in accordance with the relief sought herein;

I.  An order determining the appropriate statute of limitations applicable to this action;

J.  An order permanently enjoining Ford from continuing the unlawful practice which is the subject matter of this action;

K.  An order awarding Nasta an appropriate stipend for acting as class representatives; and

L.  An order awarding Nasta and the class any further relief as may be just and appropriate.

## JURY DEMAND

Nasta, on behalf of himself and all others similarly situated, hereby demand trial by jury on all counts of this Complaint, which are triable by a jury.

Respectfully submitted,                             DATED: 11/21/16
Plaintiff,
By his Attorneys,

_____
Kevin J. McCullough, Esq.
BBO# 644480
kmcullough@forrestlamothe.com
Michael C. Forrest, Esq.
BBO #681401
mforrest@forrestlamothe.com
Brian P.McNiff, Esq.
BBO #691655
bmcniff@forrestlamothe.com
Forrest, LaMothe, Mazow, McCullough,
Yasi & Yasi, P.C.
2 Salem Green, Suite 2
Salem, MA 01970
(617) 231-7829

Customer Completed Copy - 110684255

A

**NEW HAMPSHIRE VEHICLE RETAIL INSTALLMENT CONTRACT**   **DATE** _____ 03/28/2016

| Buyer (and Co-Buyer) Name and Address (Including County and Zip Code) | CREDITOR (Seller Name and Address) |
|---|---|
| JOSEPH D NASTA <br><br> N/A | SALEM FORD LLC <br> 470 SOUTH BROADWAY <br> SALEM, NH 03079 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle described in this contract for cash or on credit. The cash price is shown on Page 2 as "Cash Price." The credit price is shown below as "Total Sale Price." By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract.

| ANNUAL PERCENTAGE RATE <br> The cost of your credit as a yearly rate | FINANCE CHARGE <br> The dollar amount the credit will cost you | Amount Financed <br> The amount of credit provided to you or on your behalf | Total of Payments <br> The amount you will have paid when you have made all scheduled payments | Total Sale Price <br> The total cost of your purchase on credit, including your downpayment |
|---|---|---|---|---|
| 0.00 % | $ 0.00 | $ 31,221.80 | $ 31,221.80 | of $ 20,000.00 <br> $ 51,221.80 |

1-800-727-7000

 FORD CREDIT

www.fordcredit.com

**Your Payment Schedule will be:**

| Number of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| | | |

**Prepayment:** If you pay off your debt early, you will not have to pay a penalty.
**Late Payment:** You must pay a late charge on the portion of each payment received more than 10 days late. The charge is 5 percent of the late amount.
**Security Interest:** You are giving a security interest in the vehicle being purchased.
**Contract:** Please see this contract for additional information on security interest, nonpayment, default, the right to require repayment of your debt in full before the scheduled date, and prepayment penalty.

The Annual Percentage Rate may be negotiated with the Seller. The Seller may assign this contract and may retain its right to receive a portion of the Finance Charge.

True and Accurate Completed Copy - UCC Non-Authoritative Copy

True and Accurate Completed Copy - UCC Non-Authoritative Copy

e-17628-SI (JUN 14)    Page 1 of 7

Customer Completed Copy - 110684255

| New/Used | Mileage | Year and Make | Model | Vehicle Identification Number | Use For Which Purchased |
|---|---|---|---|---|---|
| New | 4 | 2016 Ford | Explorer | 1FM5K8HT6GGC52443 | ☒ Personal<br>☐ Agricultural<br>☐ Commercial |

Trade-in _____ N/A _____   $ _____ N/A _____   $ _____ N/A _____
   Year and Make                Gross Allowance              Amount Owing

### ITEMIZATION OF AMOUNT FINANCED

| | | |
|---|---|---|
| 1. Cash Price .................................................................................................... | $ | 51,221.60 (1) |
| **2. Down Payment** | | |
| Third Party Rebate Assigned to Creditor.............................................. | $ | N/A |
| Cash Down Payment........................................................................... | $ | 20,000.00 |
| N/A _____ | $ | N/A |
| Trade-In (description above)................................................................ | $ | N/A |
| Total Down Payment........................................................... | $ | 20,000.00 (2) |
| 3. Unpaid Balance of Cash Sale Price (1 minus 2) ...................................... | $ | 31,221.60 (3) |
| **4. Amounts paid on your behalf (Seller may be retaining a portion of these amounts)** | | |
| To Public Officials | | |
| (i) for license, title & registration fees  $ _____ N/A ___ ; | | |
| (ii)  for official fees  $ _____ N/A ___ ; | | |
| (iii) for taxes (not in Cash Price)  $ _____ N/A ___ | $ | N/A |
| To Insurance Companies for: | | |
| Credit Life Insurance........................................................................... | $ | N/A |
| Credit Disability Insurance.................................................................. | $ | N/A |
| N/A _____ | $ | N/A |
| N/A _____ | $ | N/A |
| To N/A _____  for N/A _____ | $ | N/A |
| To N/A _____  for N/A _____ | $ | N/A |
| To N/A _____  for N/A _____ | $ | N/A |
| To N/A _____  for N/A _____ | $ | N/A |
| To N/A _____  for N/A _____ | $ | N/A |
| To N/A _____  for N/A _____ | $ | N/A |
| To N/A _____  for N/A _____ | $ | N/A |
| To N/A _____  for N/A _____ | $ | N/A |
| To N/A _____  for N/A _____ | $ | N/A |
| Total.................................................................................. | $ | 0.00 (4) |
| 5. Amount Financed (3 plus 4).................................................................. | $ | 31,221.60 (5) |

**Debt Cancellation Waiver Addendum (Optional)**

Purchase of the debt cancellation waiver is optional and is not required to obtain credit. The terms and conditions of the debt cancellation waiver are set forth in the attached Addendum which is incorporated into the contract. By signing below you agree to purchase the debt cancellation waiver for the price set forth on this contract in the itemization of Amount Financed under section 4.

Buyer Signs A _____ N/A _____

Customer Completed Copy - 110684255

True and Accurate Completed Copy - UCC Non-Authoritative Copy

True and Accurate Completed Copy - UCC Non-Authoritative Copy

Customer Completed Copy - 110684255

True and Accurate Completed Copy - UCC Non-Authoritative Copy

**INSURANCE**

YOU ARE REQUIRED TO INSURE THE VEHICLE. YOU MAY OBTAIN VEHICLE INSURANCE FROM A PERSON OF YOUR CHOICE.
LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED.
CREDIT LIFE, CREDIT DISABILITY AND OTHER OPTIONAL INSURANCE ARE NOT REQUIRED TO OBTAIN CREDIT AND WILL NOT BE PROVIDED UNLESS YOU SIGN AND AGREE TO PAY THE PREMIUM.

**Credit Life**

| N/A | $ N/A  N/A |
| Insurance Company | Premium | Insured(s) |

You want Credit Life Insurance.

B        N/A                    B          N/A
Buyer Signs                     Co-Buyer Signs

**Credit Disability**

| N/A | $ N/A  N/A |
| Insurance Company | Premium | Insured(s) |

You want Credit Disability Insurance.

C        N/A                    C          N/A
Buyer Signs                     Co-Buyer Signs

**Other Optional Insurance**

| Coverage | Insurance Company | Premium | Term In Months |
|---|---|---|---|
| N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A |

You want the optional insurance for which premiums are included above.

N/A                            N/A
Buyer Signs                     Co-Buyer Signs

Credit Life and Credit Disability Insurance are for the term of the contract. The amount and coverages are shown in a notice or agreement given to you today.

**Anti-Theft Product (Optional)**

The purchase of anti-theft product(s) is optional and not required to obtain credit, even if the product(s) is already installed on the vehicle you selected. You may purchase anti-theft product(s) from the person of your choice. By signing below, you agree to purchase the anti-theft product(s) at the price disclosed.

| N/A | $ N/A | Term | N/A |
| N/A | $ N/A | Term | N/A |
| N/A | $ N/A | Term | N/A |

D        N/A
Buyer Signs

Customer Completed Copy - 110684255

Customer Completed Copy - 110684255

True and Accurate Completed Copy - UCC Non-Authoritative Copy

**ADDITIONAL TERMS**

**A. Payments:** You must make all payments in U.S. funds when they are due. You may prepay your debt at any time without penalty. This is a simple finance charge contract. The actual finance charge you agree to pay will depend on your payment patterns. The actual finance charge may exceed the disclosed Finance Charge if you make your payments later than the scheduled dates or in less than the scheduled amount. Your payment will be applied first to the earned and unpaid part of the Finance Charge and then to the unpaid Amount Financed. The Finance Charge is earned by applying the Annual Percentage Rate to the unpaid Amount Financed for the actual time that the unpaid Amount Financed is outstanding.

**B. Security Interest:** You give the Creditor a security interest in:
1. The vehicle and all parts or other goods put on the vehicle;
2. All money or goods received for the vehicle; and
3. All insurance premiums and service contracts financed for you.

This secures payment of all amounts you owe under this contract. It also secures your other agreements in this contract.

**C. Use of Vehicle - Warranties:** You must take care of the vehicle and obey all laws in using it. You may not sell or rent the vehicle, and you must keep it free from the claims of others. You will not use or permit the use of the vehicle outside of the United States, except for up to 30 days in Canada or Mexico, without the prior written consent of the Creditor. **If the vehicle is of a type normally used for personal use and the Creditor, or the vehicle's manufacturer, extends a written warranty or service contract covering the vehicle within 90 days from the date of this contract, you get implied warranties of merchantability and fitness for a particular purpose covering the vehicle. Otherwise, you understand and agree that there are no such implied warranties, except as otherwise provided by law.**

**D. Vehicle Insurance:** You must insure the vehicle against loss or damage from collision, fire or theft. You must name Creditor as the loss payee under the insurance policy. The Creditor must approve the type and amount of insurance. **If the vehicle is lost, damaged or destroyed, you must pay the Creditor what is still owed.**

You agree that the Creditor can make a claim under the insurance policy. You authorize the insurance company to provide Creditor any information Creditor believes necessary to make a claim. You must use insurance proceeds to repair the vehicle, unless the damage to the vehicle is considered a total loss. If the damage to the vehicle is considered a total loss, you must use the insurance proceeds to pay what you owe the Creditor. If your insurance on the vehicle doesn't pay all you owe, you must pay what is still owed.

**E. Returned Insurance Premiums and Service Contract Charges:** This contract may contain charges for insurance, service contracts, or other contracts. You agree that the Creditor can claim benefits under these contracts and unless prohibited by law, terminate them to obtain refunds of unearned charges to reduce what you owe. If the Creditor gets a refund on insurance, service contracts, or other contracts, the Creditor will subtract it from what you owe. Once all amounts owed under this contract are paid, any remaining refunds will be paid to you.

**F. Return Check Charge:** You agree to pay a return check charge of $25.00 for each check, draft, or other order of payment that is dishonored for any reason.

**G. Default:** You will be in default if:
1. You do not make a payment when it is due; or
2. You take the vehicle from the U.S. or Canada without written permission; or
3. You fail to insure the vehicle as required by this contract; or
4. You sell, rent, lease, or otherwise transfer an interest in the vehicle; or
5. Creditor's realization of the vehicle is significantly impaired by seizure of the vehicle by law enforcement, encumbrance of the vehicle, abandonment of the vehicle, or loss, theft or destruction of the vehicle, which is not covered by insurance.
6. You file a bankruptcy petition or one is filed against you; or

If you default, Creditor can exercise Creditor's rights under this contract and Creditor's other rights under the law.

**H. Repossession:** If you default, the Creditor may require you to pay at once the unpaid Amount Financed, the earned and unpaid part of the Finance Charge and all other amounts due under this contract. Creditor may repossess (take back) the vehicle, too. Creditor may also take goods found in the vehicle when repossessed and hold them for you.

**I. Your Right to Redeem:** If the vehicle is taken back, Creditor will send you a notice. The notice will say that you may redeem (buy back) the vehicle and will explain how to redeem the vehicle. You may redeem the vehicle up to the time the Creditor sells it or agrees to sell it. If you do not redeem the vehicle, it will be sold.

Customer Completed Copy - 110684255

**J. Disposition of Motor Vehicle:** If the vehicle is taken back and sold, the money from the sale, less allowed expenses, will be used to pay the amount still owed on the contract. Allowed expenses include those paid as a direct result of having to retake the vehicle, hold it, prepare it for sale, and sell it. If the money from the sale is not enough to pay off this contract and costs, you will pay what is still owed to the Creditor. If you do not pay this amount when the Creditor asks, the Creditor may charge you interest at the highest lawful rate until you pay.

**K. Collection Costs:** Except as otherwise provided by law, you must pay any and all expenses related to enforcing this contract, including collection expenses and other legal expenses.

**L. Consumer Reports:** You authorize the Assignee to obtain consumer credit reports from consumer reporting agencies (credit bureaus) for any reason and at any time in connection with this contract.

**M. Servicing and Collection:** You agree that Creditor, Creditor's affiliates, agents and service providers may monitor and record telephone calls regarding your account to assure the quality of our service or for other reasons. You also expressly consent and agree that Creditor, Creditor's affiliates, agents and service providers may use written, electronic or verbal means to contact you. This consent includes, but is not limited to, contact by manual calling methods, prerecorded or artificial voice messages, text messages, emails and/or automatic telephone dialing systems. You agree that Creditor, Creditor's affiliates, agents and service providers may use any email address or any telephone number you provide, now or in the future, including a number for a cellular phone or other wireless device, regardless of whether you incur charges as a result.

**N. Applicable Law:** You agree that this contract will be governed by the laws of the state of New Hampshire.

**O. General:** This contract contains the entire agreement between Creditor and you relating to the sale and financing of the motor vehicle. If any part of this contract is not valid, all other parts stay valid. If Creditor doesn't enforce Creditor's rights every time, Creditor can still enforce them later. Creditor will exercise all of Creditor's rights in a lawful way.
Assignee's qualified intermediary, its rights (but not its obligations) with respect to the purchase and sale of this vehicle.
Buyer acknowledges and accepts assignment of this contract to the Assignee (and any successor to Assignee). Buyer also consents to any subsequent assignment of this contract, and accepts this provision as notice of any such assignment, by Assignee or anyone else without further notice to Buyer. This consent and notice specifically includes any assignment of the security interest in the vehicle financed pursuant to this contract.

**P. Electronic Records and Signatures and Conversion to Paper:** You agree to use electronic records and electronic signatures to document this contract. Your electronic signatures will have the same effect as signatures on a paper contract.
There will be one authoritative copy of this contract. It will be the electronic copy in a document management system the Creditor designates for storing it.
The Creditor may convert that authoritative copy to a paper original. The Creditor will do so by printing one paper copy marked "Original." This paper original will have your electronic signature on it. It will have the same effect as if you had signed it originally on paper.

True and Accurate Completed Copy - UCC Non-Authoritative Copy

Customer Completed Copy - 110684255

True and Accurate Completed Copy - UCC Non-Authoritative Copy

## READ THIS ARBITRATION PROVISION CAREFULLY AND IN ITS ENTIRETY
### ARBITRATION

Arbitration is a method of resolving any claim, dispute, or controversy (collectively, a "Claim") without filing a lawsuit in court. Either you or Creditor ("us" or "we") (each, a "Party") may choose at any time, including after a lawsuit is filed, to have any Claim related to this contract decided by arbitration. Neither party waives the right to arbitrate by first filing suit in a court of law. Claims include but are not limited to the following: 1) Claims in contract, tort, regulatory or otherwise; 2) Claims regarding the interpretation, scope, or validity of this provision, or arbitrability of any issue except for class certification; 3) Claims between you and us, your/our employees, agents, successors, assigns, subsidiaries, or affiliates; 4) Claims arising out of or relating to your application for credit, this contract, or any resulting transaction or relationship, including that with the dealer, or any such relationship with third parties who do not sign this contract.

**RIGHTS YOU AND WE AGREE TO GIVE UP**
If either you or we choose to arbitrate a Claim, then you and we agree to waive the following rights:

* **RIGHT TO A TRIAL, WHETHER BY A JUDGE OR JURY**
* **RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR A CLASS MEMBER IN ANY CLASS CLAIM YOU MAY HAVE AGAINST US WHETHER IN COURT OR IN ARBITRATION**
* **BROAD RIGHTS TO DISCOVERY AS ARE AVAILABLE IN A LAWSUIT**
* **RIGHT TO APPEAL THE DECISION OF AN ARBITRATOR**
* **OTHER RIGHTS THAT ARE AVAILABLE IN A LAWSUIT**

**RIGHTS YOU AND WE DO NOT GIVE UP:** If a Claim is arbitrated, you and we will continue to have the following rights, without waiving this arbitration provision as to any Claim: 1) Right to file bankruptcy in court; 2) Right to enforce the security interest in the vehicle, whether by repossession or through a court of law; 3) Right to take legal action to enforce the arbitrator's decision;  4) Right to request that a court of law review whether the arbitrator exceeded its authority; and (5) Right to seek remedies in small claims court for disputes or claims within that court's jurisdiction.

You or we may choose the American Arbitration Association, 1-800-778-7879 (www.adr.org), or any other organization subject to our approval, to conduct the arbitration. The applicable rules (the "Rules") may be obtained from the selected organization. If there is a conflict between the Rules and this contract, this contract shall govern. This contract is subject to the Federal Arbitration Act (9 U.S.C. § 1 et seq.). The arbitration decision shall be in writing with a supporting opinion. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. To the extent that the total of your filing, administration, service or case management fee and your arbitrator or hearing fee exceeds $200, we will pay the amount in excess of $200, unless you choose to pay one-half of the total or unless the fees are reallocated in the award under applicable law or the organization's rules.

Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. Any portion of this arbitration provision that is unenforceable shall be severed, and the remaining provisions shall be enforced. If there is a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this arbitration provision shall be unenforceable. The validity and scope of the waiver of class action rights shall be decided by the court and not by the arbitrator.

**NOTICE - ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.\***

**Used Motor Vehicle Buyers Guide.** If you are buying a used vehicle with this contract, federal regulations may require a special Buyers Guide to be displayed on the window of the vehicle. **THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.**

**Guia para compradors de vehiculos usados.** LA INFORMACION QUE APARECE EN LA VENTANILLA DE ESTE VEHICULO FORMA PARTE DE ESTE CONTRATO. LA INFORMACION CONTENIDA EN EL FORMULARIO DE LA VENTANILLA ANULA CUALQUIER PREVISION QUE ESTABLEZCA LO CONTRARIO Y QUE APAREZCA EN EL CONTRATO DE VENTA.

\*Does not apply if purchased for commercial or agricultural use. In that case, you (debtor) will not assert against any assignee or subsequent holder of this Contract any claims, defenses, or setoffs which you may have against the Seller or manufacturer of the vehicle.

Customer Completed Copy - 110684255

**YOU ACKNOWLEDGE THAT YOU HAVE READ AND AGREE TO BE BOUND BY THE ARBITRATION PROVISION IN THIS CONTRACT.**

Any change in this contract must be in writing and signed by you and the Creditor.

Buyer: E _~~huish Hush~~_       Co-Buyer: E _N/A_
Signs                          Signs

The Annual Percentage Rate may be negotiated with the Seller.  The Seller may assign this contract and may retain its right to receive a portion of the Finance Charge.

**NOTICE TO BUYER**

1. Read this contract before signing.
2. You are entitled to an exact copy of the contract you sign.

Buyer (and Co-Buyer) acknowledge that (i) before electronically signing this contract, Buyer (and Co-Buyer) received and reviewed a true and completely filled in paper copy of this contract and (ii) at the time of electronically signing this contract, Buyer (and Co-Buyer) received a true and completely filled in paper copy of this contract.

F _~~huish W huish~~_       F _N/A_
Buyer Signs                  Co-Buyer Signs

Seller ____SALEM FORD LLC____  By G _Mgmt_  Title _F and I Mgr_

**THIS CONTRACT IS NOT VALID UNTIL YOU AND SELLER SIGN IT.**

**GUARANTY**

To cause the Seller to sell the vehicle described in this contract to the Buyer on credit, each person who signs below as a "Guarantor" guarantees the payment of this contract. This means that if the Buyer fails to pay any money that is owed on this contract, each person who signs as a guarantor will pay it when asked. Each Guarantor who signs below agrees that he will be liable for the whole amount owed even if one or more other persons also signs this Guaranty. Each Guarantor also agrees to be liable even if the Creditor does one or more of the following: (a) gives the Buyer more time to pay one or more payments, or (b) gives a release in full or in part to any of the other Guarantors, or (c) releases any security. Each Guarantor also states that he has received a completed paper copy of this contract and this Guaranty at the time of electronically signing.

Guarantor ____N/A____       Address ____N/A____

Guarantor ____N/A____       Address ____N/A____

**ASSIGNMENT**

Seller will assign this contract electronically to _Ford Motor Credit Company LLC_ ("Assignee"). That Assignee will then have all the Seller's rights, privileges, and remedies. To contact Assignee about his contract, call ____1-800-727-7000____, or visit their website at ____www.fordcredit.com____.

Seller ____SALEM FORD LLC____  By H _Mgmt_  Title _F and I Mgr_

True and Accurate Completed Copy - UCC Non-Authoritative Copy

Ray Seraphin Ford Inc        (860) 875-3369 ext 00023

B

DEALER 11D 407                VIN  1FM5K8HT9GGB90617

| | Suggested Retail Price | Invoice Amount |
|---|---|---|
| K8HR EXPLORER PLATINUM 4WD | 52970 00 | 49395 00 |
| 40YR MODEL YEAR | | |
| G1   SHADOW BLACK | | |
| EB   NIRVANA LTHR EBONY BLACK | | |
| | | |
| INCLUDED ON THIS VEHICLE | | |
| EQUIPMENT GROUP 600A | | |
| | | |
| OPTIONAL EQUIPMENT/OTHER | | |
| .20" BRIGHT MACHINED FACE WHLS | | |
| 99T .3.5L V6 ECOBOOST ENGINE | NC | NC |
| 44C .6-SPEED AUTO TRANSMISSION | NC | NC |
| .P255/50R20 A/S BSW TIRES | | |
| 16N FLOOR MATS, ALL WEATHER | 75 00 | 70 00 |
| 17J 2ND ROW BUCKET SEATS | 695 00 | 643 00 |
| 422 CALIFORNIA EMISSIONS SYSTEM | NC | NC |
| 51D 2ND ROW CONSOLE | 150 00 | 141 00 |
| SELECT SHIFT TRANSMISSION | | |
| 153 FRONT LICENSE PLATE BRACKET | NC | NC |
| TOTAL OPTIONS/OTHER | 920 00 | 860 00 |
| TOTAL VEHICLE & OPTIONS/OTHER | 53890 00 | 50255 00 |
| DESTINATION & DELIVERY | 945 00 | 945 00 |
| | | |
| TOTAL FOR VEHICLE | 54835 00 | |
| | | |
| FUEL CHARGE | | 45 03 |
| ADVERTISING ASSESSMENT | | 808 00 |
| SHIPPING WEIGHT   4776 LBS. | | |
| | | |
| TOTAL | 54835 00 | 52053 03 |

This invoice may be retained and final cost of this vehicle to the dealer is the possibility of future rebates, allowances, discounts and incentive award from Ford Motor Company to the dealer.

| Sold to | | | | |
|---|---|---|---|---|
| Ray Seraphin Ford Inc        11D407 | | | | |
| P.O. BOX 798 | | | | |
| Rockville                    CT 06066 | | | | |

| Order Type | Ramp Code | Batch ID | Price Level |
|---|---|---|---|
| 2 | CA3K | FM211 | 635 |

Ship to (If other than above)

| Date Inv. Prepared | | | Item Number | Transit Days |
|---|---|---|---|---|
| 12 | 21 | 15 | 11-Z000 | 19 |

Ship Through

| Invoice & Unit Identification NO. | Final Assembly Point | Finance Company and/or Bank |
|---|---|---|
| 1FM5K8HT9GGB90617 | CHICAGO | Ford Motor Credit        000001 |

| Total Holdback | Invoice Total | A & Z Plan | D Plan | X Plan | FPA |
|---|---|---|---|---|---|
| 1617 | 52053.03 | 49903.03 | 50003.03 | 52119.82 | 540.00 |

This invoice to be used for the billing of vehicles only                Dealer's copy

CAMPBELL CAMPBELL EDWARDS & CONROY
PROFESSIONAL CORPORATION



ONE CONSTITUTION CENTER
THIRD FLOOR
BOSTON, MA 02129
TEL: (617) 241 3000
FAX: (617) 241 5115

November 2, 2016

Brian P. McNiff, Esquire
Forrest, LaMothe, Mazow
McCullough, Yasi & Yasi, P.C.
2 Salem Green, Suite 2
Salem, MA  01970

RE:    Claim of Joseph Nasta against Ford Motor Company

Dear Mr. McNiff:

Thank you for your agreement enlarging the time to the end of this week for Ford Motor Company to send you its formal G.L. c. 93A response to your letter dated August 30, 2016, on behalf of Joseph Nasta.   Ford has now reviewed the information reasonably available to it that seems relevant to the claim you articulated in your August 30 letter and has also considered the relevant law.

So far as relevant facts are concerned, Ford believes the following ones are dispositive:

-    Ford's limited express warranty provides, in relevant part, that its dealers "will, without charge, repair, replace, or adjust all parts of your vehicle that malfunction or fail during normal use ... due to a manufacturing defect in factory-supplied materials or factory workmanship."

-    Mr. Nasta's Explorer has not "malfunctioned or failed" in any way in normal use or, for that matter, in any kind of use, and you have not described any malfunction or failure in your August 30 letter.

-    There are no "substantial dents, dings, or damage" visible on the doors of the Explorer.

-    The "creases" described in the letter from Shane Smith of which a copy is attached to yours of August 30, and which Mr. Nasta pointed out and Ford's engineer viewed and photographed on November 1, are not manufacturing defects in factory-supplied materials or factory workmanship. They are manufacturing variations inherent to the stamping process and within applicable manufacturing tolerances.  Put another way, that is the way 2016 Ford Explorers are built.



Brian P. McNiff, Esquire
Page Two
November 2, 2016

- The "creases" you describe and that Mr. Nasta pointed out have no effect on the functionality of the Explorer or on its durability or safety. They are, to the extent they are noticeable, purely cosmetic.

- The 2014 and 2015 Ford Explorers which Mr. Nasta bought his family members before he bought the 2016 model that is the subject of your August 30 letter, which Ford's engineer also inspected and photographed on November 1, have "creases" on their doors that are materially identical to those on the doors of the 2016 Explorer. None of the "creases" on the doors of any or the three vehicles are hidden. The "creases" on the doors of the 2016 Explorer, as well as any other "dents" and "dings" to which you may have intended to refer in your August 30 letter, were present and readily visible to Mr. Nasta when he took delivery.

So far as relevant law, I have the following comments:

- Because the "creases" about which Mr. Nasta complains and which he pointed out on November 1 are not "manufacturing defect[s]" that have caused his Explorer to "malfunction or fail during normal use," they are not covered by Ford's limited express warranty and Ford has breached no express warranty by refusing to supply doors that do not have them.

- Because the "creases" about which Mr. Nasta complains have no effect on the functionality or durability of the Explorer, *i.e.* do not affect the "operative essentials" of the vehicle, they do not constitute a breach of the implied warranty of merchantability. *See, e.g., Hannon v. Original Gunnite Aquatech Pools, Inc.,* 385 Mass. 813, 822 (1982).

- G.L. c. 90, §7N1/2 is not applicable. That statute provides relief in certain circumstances when there is a "nonconformity" in a motor vehicle. "Nonconformity" is a defined term: it means a "specific or generic defect or malfunction, or any concurrent combination of such defects or malfunctions that substantially impairs the use, market value or safety of a motor vehicle." G.L. c. 90, §7N1/2(1). The "creases" about which Mr. Nasta complains do not substantially impair the use or safety of the Explorer or its market value.

- 940 CMR 5.03(5) is inapplicable for essentially the same reason. The word "defect" in that regulation is a defined term. It means a "defect in design, construction or performance which ... (a) creates an unreasonable risk of accident, death, or injury; (b) substantially impairs the operation or performance of the



Brian P. McNiff, Esquire
Page Three
November 2, 2016

vehicle; or (c) substantially impairs the value of the vehicle. 940 CMR 5.01. The "creases" about which Mr. Nasta complains create no risk of accident, death, or injury, do not affect the operation or performance of the Explorer, and do not substantially impair the value of that vehicle. Mr. Nasta may not like the way they look, but that is not what "substantially impair the value" means.

-   940 CMR 3.16 declares noncompliance with a statute, rule, or regulation that is "meant for the protection of the public's health, safety, or welfare" to be a violation of G.L. c. 93A, §2. As discussed above, you have described no "nonconformity" in the Explorer that could constitute a violation of G.L. c. 90, §7N1/2 even if that statute is properly characterized as one enacted for the protection of "health, safety, or welfare." You have not identified any other statute or regulation supposedly "meant for the protection of the public's health, safety, or welfare" that Ford supposedly has violated, except for the facially inapplicable 940 CMR 5.01, and through my own investigation of the applicable law I have been unable to identify any such statute or regulation that could be violated by "creases" in a motor vehicle's doors that have no effect on its functionality, durability, or safety.

    Based on the foregoing facts and law, Ford has concluded that you have identified no conduct on its part that could constitute a violation of G.L. c. 93A or any other provision of Massachusetts law. Ford is therefore unwilling to pay any amount to settle Mr. Nasta's claim or to provide any other relief. If there is additional relevant factual information of which I have not taken account in this letter, or any applicable statute or regulation you believe I have overlooked, please let me know what it is and Ford will consider whether it should change its conclusion.

    Because on the facts and the law there is no c. 93A violation of any type, there is really no need for me to address your extensive comments about the putative class action you say Mr. Nasta intends to bring. I do, however, feel constrained to say that it strikes me, based on the facts as I understand them to be and the law as I know it to be, that for many reasons this is not a claim that likely would ever be certified as a class action.

Very truly yours,

John A. K. Grunert

cc.   William J. Conroy, Esquire

Salem Ford-Hyundai
470 S. Broadway
Salem, NH 03079

To whom it may concern,

In late April Joseph Nasta brought his 2016 Explorer in ( VIN# IFM5K8HT6GGC52443) to have us look at a small crease in all four of his doors. i told him it looked like something that happened during the manufacturing process and that I would bring it to Ford's attention and see if we could get it resolved. I started the prior approval process with Ford Motor Co. I sent multiple sets of pictures and an explanation of what the issue was. Ford had me look at other 2016 Explorer's on the lot and all 2016's had the same marks, at the insistence of Mr. Nasta i pressed Ford for an approval to replace the doors. On May 20th I did get the approval. I ordered a set of doors and when they arrived they had the same crease in the same location. I then contacted Ford and had the doors inspected at the warehouse before they were shipped. Ford inspected and carefully packaged up a set of doors. When the doors arrived they all had the same crease. Some were better than others but the crease was still present to some degree in all the doors. At this point there is nothing more I can do as it looks like a manufacturing issue and every door I order is going to have the same problem. Any questions feel free to email me at ssmith@keyauto.com.


Sincerely,

Shane Smith

8/9/16

## Interior / Exterior

**Request Form Summary**

**VIN 1FM5K8HT6GGC5244J**
**Vehicle Model 2016 EXPLORER**
**Repair Order Number 252185** (Edit This)
**Repair Order Date May 19 2016** (Edit This)
**Line Number of R.O. B** (Edit This)
**Hotline Contact ID 110256609**
**Request Date May 20 2016 10:59:01**
**Request Status Conditional Approval - See Comments**
**Prior Approval Code PAAMJ**
**Repair Already Completed Request No**

**Request Form Details**

**1. Please describe customers concern.**
There is a deformity in the section of the door outlined in the pictures, looks like from the manufacturing process

**2. What is the intended repair, list all components needed for repair?**
replace door shells.

**3. Provide any additional details necessary.**
Please include any available technical information that you believe will help process your prior approval request.
This is a brand new vehicle, all doors are going to have to be replaced front and rear. all doors have same issue. I have looked at many many explorers and have not seen this on any other vehicle. I am not sure if I need prior approval for this as the base part numbers did not come down in the drop box. base part numbers 7824631,7824630,7820124,7820125. Please advise.

Thank you
Shane Smith

**Comment History**

**Comment From: Ford**
**Comment Date: May 20 2016 11:45:59**
Hello Shane,

The close-up and additional images do not clearly show the concern. Please update this request with clear close-up images at different angles to help show the concern better.

In addition, please note that since the concern is on all 4 doors we will need overall images of each door and close-up images of each door labeled (LF, LR, RF, RR) to help show which image is being viewed in each close-up.

When attempting to capture clear close-up images, it is helpful to make sure the camera is set on close-up/macro mode (flower icon). While in close up/macro mode, holding the camera 12 - 18 inches away from the concern, utilizing the zoom and auto-focus features of the camera, will help capture a clear image. In some instances, it may be helpful to place a pointing device (pen, finger, sticky note, etc.) close to the concern and allow the camera to focus. Please also review the images before submitting the request for review. The concern must be clearly visible to make the most accurate warrantability determination.

**Comment From: DEALER**
**Comment Date: Jun 01 2016 13:41:45**
This is very hard to depict in a picture,but the last pic of right rear shows both front and rear door well. They are creases.

**Comment From: Ford**
**Comment Date: Jun 01 2016 13:53:17**
Shane,

Thank you for the added images.

As these concerns are not related to obvious damage, the Front and Rear Doors (base part #ENTRE) are warrantable under the New Vehicle Warranty.

**Additional Comments**
You have 1800 characters remaining .



By volunteerin in providing your personally identifiable information you are consenting to the collection, use and disclosure of such personal information consistent with the collection, use, processing, transfer, and disclosure of this information set globally. You acknowledge and understand that Ford will use and disclose the information in accordance with its privacy procedures. Your consent shall be deemed to include your consent to any processing of the information required to provide the services requested by you in your country.

© Copyright 2016 Ford Motor Company. All rights reserved.

**COMMONWEALTH AUTO BODY**
335 LEE BURBANK HWY
REVERE, MA 02151
PHONE: (781) 289-2400

**\*\*\* PRELIMINARY ESTIMATE \*\*\***

08/23/2016 12:19 PM

## Owner

**Owner:** Joseph Nasta

## Inspection

**Inspection Date:** 08/23/2016 12:19 PM

**Company:** Commonwealth Auto Body
**Contact:** Daniel Sica
**Address:** 335 Lee Burbank Hwy
**City State Zip:** Revere, MA 02151
**Email:** comm280@aol.com

**Inspection Type:**

**Appraiser License # :** 15004

**Work/Day:** (781)289-2400
**FAX:**

## Repairer

**Repairer:** Commonwealth Auto Body Inc.
**Address:** 335 Lee Burbank Hwy

**City State Zip:** Revere, MA 02151
**Email:** Commonwealthautobody@gmail.com
**License # :** 2423

**Target Complete Date/Time:**

**Contact:**
**Work/Day:** (781)289-2400
**FAX:** (781)289-3387
**Work/Day:**

**Regulation ID:**

**Days To Repair:** 17

## Vehicle

2016 Ford Explorer Platinum 4 DR Wagon
6cyl Gasoline Turbo 3.5
6-Speed Automatic

**Lic.Plate:**
**Lic.Expire:**
**Veh Insp# :**
**Condition:**
**Ext. Color:** ABSOLUTE BLACK
**Ext. Refinish:** Two-Stage
**Ext. Paint Code:** G1

**Lic State:** MA
**VIN:** 1FM5K8HT6GGC52443
**Mileage Type:** Actual
**Code:** P8473G
**Int. Color:**
**Int. Refinish:**
**Int. Trim Code:**

## Options

| | | |
|---|---|---|
| 1st Row LCD Monitor(s) | 2nd Row Head Airbags | 3rd Row Head Airbags |
| 4-Wheel Drive | AM/FM CD Player | Adaptive Cruise Control |
| Alarm System | Aluminum Trim | Aluminum/Alloy Wheels |
| Anti-Lock Brakes | Auto Dimming Ext Mirrors | Auto Headlamp Control |
| Auto Locking Hubs (4WD) | Automatic Dimming Mirror | Automatic High Beam |
| Auxiliary Audio Input | Blind Spot Sensor | Cargo/Trunk Net |
| Center Console | Chrome Grille | Chrome Trim |
| Daytime Running Lights | Digital Signal Processor | Driver Information Sys |
| Dual Air Conditioning | Dual Airbags | Dual Power Seats |

2016 Ford Explorer Platinum 4 DR Wagon
Claim # :                                                                                              08/23/2016 12:19 PM

| | | |
|---|---|---|
| Dual Zone Auto A/C | Electric Steering | Electronic Transfer Case |
| Emergency S.O.S. System | Ext Mirror Turn Signals | Fog Lights |
| Garage Door Opener | Head Airbags | Heated Frnt & Rear Seats |
| Heated Power Mirrors | Heated Rear Window Wiper | Heated Steering Wheel |
| High Definition Radio | Illuminated Visor Mirror | Intermittent Wipers |
| Keyless Entry Keypad | Keyless Entry System | Keyless Ignition System |
| LED Brakelights | LED Headlamps | Lane Departure Alert |
| Leather Seats | Leather Shift Knob | Leather/Wood Steer Wheel |
| Lighted Entry System | MP3 Decoder | Memory Seats |
| Mirror(s) Memory | Navigation System | Overhead Console |
| Panorama Roof W/Pwr Mnrf | Parking Assist System | Passenger Knee Airbag |
| Power Adjustable Pedals | Power Door Locks | Power Liftgate |
| Power Windows | Privacy Glass | Pwr Driver Lumbar Supp |
| Pwr Folding Ext Mirrors | Pwr Tilt/Tele. Str Wheel | Rain-Sensing W/S Wipers |
| Rear Collisn Mitigation | Rear Heater | Rear Spoiler |
| Rear View Camera | Rear Window Defroster | Rear Window Wiper/Washer |
| Remote Starter | Reverse Sensing System | Roof Rails |
| Side Airbags | SiriusXM Satellite Radio | Split Folding Rear Seat |
| Strg Wheel Radio Control | Tachometer | Theft Deterrent System |
| Tire Pressure Monitor | Touch Screen Display | Traction Control System |
| Trailer Hitch | Trip Computer | Ventilated Front Seat(s) |
| Wireless Audio Streaming | Wireless Phone Connect | Wood Interior Trim |

## Damages

| Line | Op | Guide | MC | Description | MFR.Part No. | Price | ADJ% | B% | Hours | R |
|---|---|---|---|---|---|---|---|---|---|---|
| **Unibody/Frame** | | | | | | | | | | |
| 1 | I | M00 | | mask jamb | Repair | | | | 1.0* | SM |
| **Stripes And Mouldings** | | | | | | | | | | |
| 2 | RI | 1037 | | Flare,Wheel Opening LT | R & I Assembly | | | | INC | SM |
| 3 | RI | 1038 | | Flare,Wheel Opening RT | R & I Assembly | | | | INC | SM |
| 4 | RI | 1201 | | Flare,Wheel Opening LT | R & I Assembly | | | | INC | SM |
| 5 | RI | 1202 | | Flare,Wheel Opening RT | R & I Assembly | | | | INC | SM |
| **Front Bumper** | | | | | | | | | | |
| 6 | RI | 23 | | Front Bumper Cover R&I | R & I Assembly | | | | 2.4 | SM |
| **Front End Panel And Lamps** | | | | | | | | | | |
| 7 | RI | 71 | | Lens,Headlamp LT | R & I Assembly | | | | 0.5 | SM |
| 8 | RI | 72 | | Lens,Headlamp RT | R & I Assembly | | | | 0.5 | SM |
| **Front Body And Windshield** | | | | | | | | | | |
| 9 | BR | 103 | 13 | Fender,Front LT | Blend Refinish | | | | 2.1 | RF |
| | | | | | 1.0  Blend | | | | | |
| | | | | | 0.6  Two-stage setup | | | | | |
| | | | | | 0.5  Two-stage | | | | | |
| 10 | BR | 104 | | Fender,Front RT | Blend Refinish | | | | 1.3 | RF |
| | | | | | 0.9  Blend | | | | | |
| | | | | | 0.4  Two-stage | | | | | |
| 11 | RI | 180 | | Grille,Upper Cowl | R & I Assembly | | | | 0.5 | SM |
| **Front Body Interior Sheetmetal** | | | | | | | | | | |
| 12 | RI | 545 | | Shield,Front Splash LT | R & I Assembly | | | | INC | SM |
| 13 | RI | 546 | | Shield,Front Splash RT | R & I Assembly | | | | INC | SM |
| **Roof** | | | | | | | | | | |
| 14 | RI | 1485 | | Mldg,Roof Drip LT | R & I Assembly | | | | 0.2 | SM |

08/23/2016 12:26 PM

2016 Ford Explorer Platinum 4 DR Wagon
Claim # :

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 15 | RI | 1486 | Mldg,Roof Drip RT | R & I Assembly | | | .A |
| 16 | RI | 1352 | Rail,Luggage Rack LT | R & I Assembly | | | M |
| 17 | RI | 1353 | Rail,Luggage Rack RT | R & I Assembly | | | SM |

**Front Doors**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 18 | E | 207 | Door Shell,Front LT | FB5Z7820125A | $1,235.37 | . . . | SM |
| 19 | L | 207 | Door Shell,Front LT | Refinish | | 4.0 | RF |
| | | | | 2.5  Surface | | | |
| | | | | 1.0  Edge | | | |
| | | | | 0.5  Two-stage | | | |
| 20 | E | 208 | Door Shell,Front RT | FB5Z7820124A | $1,206.85 | INC | SM |
| 21 | L | 208 | Door Shell,Front RT | Refinish | | 3.0 | RF |
| | | | | 2.5  Surface | | | |
| | | | | 0.5  Two-stage | | | |
| 22 | L | 243 | Frt Door Edge/Jamb LT | Refinish | | INC | |
| 23 | L | 244 | Frt Door Edge/Jamb RT | Refinish | | 0.5 | RF |
| | | | | 0.5  Surface | | | |

**Rear Doors**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 24 | E | 287 | Door Shell,Rear LT | FB5Z7824631A | $1,128.15 | 5.6 | SM |
| 25 | L | 287 | Door Shell,Rear LT | Refinish | | 3.2 | RF |
| | | | | 2.2  Surface | | | |
| | | | | 1.0  Edge | | | |
| | | | | INC  Two-stage | | | |
| 26 | E | 288 | Door Shell,Rear RT | FB5Z7824630A | $1,140.30 | 5.6 | SM |
| 27 | L | 288 | Door Shell,Rear RT | Refinish | | 3.2 | RF |
| | | | | 2.2  Surface | | | |
| | | | | 1.0  Edge | | | |
| | | | | INC  Two-stage | | | |

**Quarter And Rocker Panel**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 28 | BR | 570 | Panel,Bodyside Otr Upr LT | Blend Refinish | | 0.7 | RF |
| | | | | 0.7  Blend | | | |
| | | | | INC  Two-stage | | | |
| 29 | BR | 571 | Panel,Bodyside Otr Upr RT | Blend Refinish | | 0.7 | RF |
| | | | | 0.7  Blend | | | |
| | | | | INC  Two-stage | | | |
| 30 | BR | 389 | Panel,Quarter LT | Blend Refinish | | 1.2 | RF |
| | | | | 1.2  Blend | | | |
| | | | | INC  Two-stage | | | |
| 31 | BR | 390 | Panel,Quarter RT | Blend Refinish | | 1.2 | RF |
| | | | | 1.2  Blend | | | |
| | | | | INC  Two-stage | | | |
| 32 | RI | 397 | Door,Fuel Filler RT | R & I Assembly | | 0.3 | SM |
| 33 | RI | 391 | Applique,Qtr Panel LT | R & I Assembly | | 2.8 | SM |
| 34 | RI | 392 | Applique,Qtr Panel RT | R & I Assembly | | 2.6 | SM |
| 35 | RI | 395 | Qtr Glass R & I LT | R & I Assembly | | INC | SM |
| 36 | RI | 396 | Qtr Glass R & I RT | R & I Assembly | | INC | SM |
| 37 | EC | 434 | Sealant Kit,Qtr Glass LT | Replace Economy | $30.00* | 0.0* . | SM |
| 38 | EC | 435 | Sealant Kit,Qtr Glass RT | Replace Economy | $30.00* | 0.0* | SM |

**Inner Quarter & Panels**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 39 | RI | 299 | Shield,Quarter Panel LT | R & I Assembly | | 0.3 | SM |
| 40 | RI | 300 | Shield,Quarter Panel RT | R & I Assembly | | 0.3 | SM |

**Rear Bumper**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 41 | N | 519 | Rear Bumper Cover R&I | Additional Labor | | 1.8 | SM |

**Rear Body, Lamps And Floor Pan**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 42 | RI | 533 | Taillamp Assembly LT | R & I Assembly | | INC | SM |
| 43 | RI | 534 | Taillamp Assembly RT | R & I Assembly | | INC | SM |

**Manual Entries**

2016 Ford Explorer Platinum 4 DR Wagon
Claim # :

06/23/2016 12:19 PM

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 44 EC | M14 | Corrosion Protection | Replace Economy | $25.00* | 0.5* | | RF |
| 45 EC | M17 | Cover Car Exterior | Replace Economy | $5.00* | 0.3* | | RF |
| 46 I | M58 | Clean For Delivery | Repair | | 1.0* | | SM |
| 47 EC | M60 | Hazardous Waste Removal | Replace Economy | $15.00* | | | SM |
| 48 L | M66 | Color Sand And Buff | Refinish | | 6.0* | | RF |
| 49 E | | Clear Bra | Replace OEM | $899.00* | | | SM* |
| **49** | **Items** | | | | | | |

| MC | Message |
|---|---|
| 13 | INCLUDES 0.6 HOURS FIRST PANEL TWO-STAGE ALLOWANCE |

### Estimate Total & Entries

| | | | |
|---|---|---|---|
| Gross Parts | | $5,609.67 | |
| Other Parts | | $105.00 | |
| Paint & Materials | 27.9 Hours @ $25.00 | $697.50 | |
| Parts & Material Total | | | $6,412.17 |
| Tax on Parts & Material | @ 6.250% | | $400.76 |

| Labor | Rate | Replace Hrs | Repair Hrs | Total Hrs | |
|---|---|---|---|---|---|
| Sheet Metal (SM) | $40.00 | 22.8 | 3.8 | 26.6 | $1,064.00 |
| Mech/Elec (ME) | $40.00 | | | | |
| Frame (FR) | $45.00 | | | | |
| Refinish (RF) | $40.00 | 27.9 | | 27.9 | $1,116.00 |

| | | | |
|---|---|---|---|
| Labor Total | | 54.5 Hours | $2,180.00 |
| Gross Total | | | $8,992.93 |
| Net Total | | | $8,992.93 |

Alternate Parts Y/00/00/00/00/00 CUM 00/00/00/00/00 Zip Code: 02151 Default
Rate Name Default

**Audatex Estimating 8.0.035 ES 08/23/2016 12:28 PM REL 8.0.035 DT 08/01/2016 DB 08/15/2016**
© 2016 Audatex North America, Inc.

**2.5 HRS WERE ADDED TO THIS ESTIMATE BASED ON AUDATEX'S TWO-STAGE REFINISH FORMULA.
ESTIMATE CALCULATED USING THE 2.5 HOUR MAXIMUM ALLOWANCE FOR TWO-STAGE REFINISH OF NON-FLEX, EXTERIOR
SURFACES.**

### Op Codes

| | | |
|---|---|---|
| * = User-Entered Value | ^ = Labor Matches System Assigned Rates | E = Replace OEM |
| NG = Replace NAGS | EC = Replace Economy | OE = Replace PXN OE Srpls |
| UE = Replace OE Surplus | ET = Partial Replace Labor | EP = Replace PXN |
| EU = Replace Recycled | TE = Partial Replace Price | PM = Replace PXN Reman/Reblt |
| UM = Replace Reman/Rebuilt | L = Refinish | PC = Replace PXN Reconditioned |
| UC = Replace Reconditioned | TT = Two-Tone | SB = Sublet Repair |
| N = Additional Labor | BR = Blend Refinish | I = Repair |

2016 Ford Explorer Platinum 4 DR Wagon
Claim #

08/23/2016 12:19 PM

| | | |
|---|---|---|
| IT = Partial Repair | CG = Chipguard | RI = R & I Assembly |
| P = Check | AA = Appearance Allowance | RP = Related Prior Damage |



This report contains proprietary information of Audatex and may not be disclosed to any third party (other than the insured, claimant and others on a need to know basis in order to effectuate the claims process) without Audatex's prior written consent.

© 2016 Audatex North America, Inc.
AUDATEX is a trademark owned by Audatex North America, Inc. All rights reserved.



 **Forrest, LaMothe, Mazow,**
**McCullough, Yasi & Yasi, P.C.** 
Consumer Advocacy and Class Action Litigation

Robert E. Mazow, Esq.
Admitted in MA & NH
RMazow @ forrestlamothe.com

Kevin J. McCullough, Esq.
Admitted in MA & NH
KMcCullough @ forrestlamothe.com

John R. Yasi, Esq.
Admitted in MA
JYasi @ forrestlamothe.com

Paul F.X. Yasi, Esq.
Admitted in MA
PYasi @ forrestlamothe.com

Matthew T. LaMothe, Esq.
Admitted in MA
MLaMothe @ forrestlamothe.com

Michael C. Forrest, Esq.
Admitted in MA, CA & NH (reserve)
MForrest @ forrestlamothe.com

Brian P. McNiff, Esq.
Admitted in MA
BMcNiff @ forrestlamothe.com

David J. Relethford, Esq.
Admitted in MA
DRelethford @ forrestlamothe.com

**Salem, MA**
2 Salem Green, Suite 2
Salem, MA 01970
(617) 231-7829
(877) 599-8890
(617) 517-3271 Fax

**Concord, CA**
3998 Chestnut Avenue
Concord, CA 94519
(415) 579-9481
(877) 599-8890
(617) 517-3271 Fax

PLEASE ADDRESS ALL
CORRESPONDENCE
TO THE SALEM,
MASSACHUSETTS
ADDRESS

www.ForrestLaMothe.com

August 30, 2016


*Via* **Certified Mail # 7015 0920 0002 0572 5810**
*Via* **Facsimile (313) 845-5555 (Office of Counsel)**

The Ford Motor Company
Customer Relationship Center
Attn:  Ms. Lucy Rodriguez - Customer Service Manager
P.O. Box 6248
Dearborn, MI 48121

**Notification of Willful/Knowing Violation of M.G.L. c. 93A, § 2**
**Notification of Willful/Knowing Violation of M.G.L. c. 90, § 7N1/2(2)**
**Notification of Willful/Knowing Violation of 940 CMR 3.16**
**Notification of Willful/Knowing Violation of 940 CMR 5.03**
**Demand Pursuant to M.G.L. c. 93A, § 9(3)**

Dear Ms. Rodriguez:

Please be advised that this office represents Mr. Joseph D. Nasta ("Nasta"), a Massachusetts resident, with respect to his claims asserted against The Ford Motor Company ("Ford")[1] for the violations referenced above.  Nasta serves this demand seeking actual and injunctive relief for himself and a putative class of similarly situated persons.

Nasta claims that on March 28, 2016 he purchased a new 2016 Ford Explorer Platinum 4DR Wagon (VIN#1FM5K8HT6GGC52443) (the "Vehicle").[2]  Nasta asserts that Ford defectively manufactured and improperly provided to Nasta his Vehicle with substantial and material defects.  Nasta claims that selling the Vehicle with these defects, and further, refusing to remedy the matter sufficiently, constitutes a violation of Massachusetts law.

More specifically, Nasta asserts that Ford defectively manufactured, and provided to Nasta, a vehicle which contained substantial dents, dings and damage to all four doors.[3]

Upon delivery of the Vehicle, Nasta discovered the Vehicle possessed four dented

---

[1] Ford is defined to also include its predecessors, subsidiaries, affiliates and/or assigns.

[2] Nasta also purchased a 2014 and 2015 Ford Explorer from Salem Ford, LLC which possessed the same damage and defects as described in this demand letter.
[3] Nasta also asserts that the vehicle manufactured and distributed by Ford contained dramatic damage to the front dash board, however he does not make a claim for said defect presently.

doors. Nasta immediately made this pre-existing damage known to Salem Ford, LLC and to the Ford Motor Company. See, **Exhibit 1** (*Correspondence from Shane Smith, dated August 9, 2016*); and **Exhibit 2**, (*Correspondence from Jessica de Koekkoek, Customer Service Manager, Ford Motor Company, dated August 5, 2016*).

Ford initially approved the requests for replacement of the Vehicles' doors. See, **Exhibit 3** (*Request Form Summary from Ford, dated June 1, 2016*)("... As these concerns are not related to obvious damage, the Front and Rear Doors (base part #ENTRE) are warrantable under the New Vehicle Warranty.").

However, the replacement doors provided by Ford came with the same (or worse) defects as the original, and as such the Salem Ford mechanic refused to replace the doors as they would not remedy the problem. See, **Exhibit 1**.

Thereafter, and without informing Nasta, Ford sent a second set of replacement doors to Salem Ford; however, these doors again contained the same defects, and as such were not installed on the Vehicle.[4]

As a result of these failed attempts to remedy the problem, Nasta was without his vehicle for over 30 days.

Ford now refuses to provide door replacements, and further, refuses to purchase back the Vehicle. See, **Exhibit 4** (*Correspondence from Lucy Rodriguez, Customer Service Manager*).

Nasta asserts Ford has failed and/or refused to adequately repair or replace the damaged Vehicle (in violation of Massachusetts law) and as such he continues to suffer damages. In fact, because Ford refuses to remedy the defect to Nasta's Vehicle, the only other option is to undertake substantial personal expense to remedy the defects.[5]

As you are aware, the Massachusetts Law (M.G.L. c. 90, § 7N1/2(2)) requires that:

> If a motor vehicle does not conform to any applicable express or implied warranty, and the consumer reports the nonconformity to the manufacturer of the vehicle, its agent or its authorized dealer during the term of protection, the manufacturer, its agent or its authorized dealer shall effect such repairs as are necessary to conform the vehicle to such warranty.

Id. Further, M.G.L. c. 90, § 7N1/2(3) states that:

> If the manufacturer... does not conform the motor vehicle to any such applicable express or implied warranty by curing any nonconformity after a reasonable number of attempts, the manufacturer shall accept return of the vehicle from the consumer...[and] the manufacturer shall refund the full contract price of the vehicle....

---

[4] It is worth noting that Nasta, Salem Ford employees and multiple sales representatives have noticed the same issues with regard to numerous new Ford Explorers - which can be found on Ford inventory lots.

[5] For example, Commonwealth Auto Body in Revere, MA provided a "Preliminary Estimate" to replace the four doors. Per this estimate, the cost to replace the four doors is $8,992.93.[5] See, **Exhibit 5** (*Preliminary Estimate from Commonwealth Auto Body*).

Id. Ford's refusal to cure the nonconformity (defects) in a reasonable time coupled with its present refusal to take any further remedial action or replace Nasta's Vehicle constitutes a violation of M.G.L. c. 90, § 7N1/2. A violation of M.G.L. c. 90, § 7N1/2 constitutes a *per se* violation of M.G.L c. 93A, § 2.

In addition, Nasta alleges that Ford failed to properly notify Nasta and other similar situated purchasers of known defects in the Ford vehicles, i.e. pre-existing damage to Ford Explorer doors.

Specifically, Nasta alleges that Ford's failure "...to give prompt written notice of any defect in motor vehicles manufactured by it to its distributors, zone offices, dealers and other representatives, as well as to the purchasers or owners of such vehicles who are known to the manufacturer[]" constitutes a violation of M.G.L. c. 93A. See, 940 CMR 5.03(5). Specifically, Nasta alleges that Ford is, and has been, aware of the Explorer door defect for some time, and yet Ford has failed to give the required notice to Massachusetts purchasers as required by 940 CMR 5.03(5).

Finally, Nasta asserts that Ford's acts and/or omissions constitute violations of 940 CMR 3.16(3) which states that:

> [A]n act or practice is a violation of M.G.L. c. 93A, § 2 if: (3) It fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection..."

Id. Accordingly, Ford's violation of M.G.L. c. 90, § 7N1/2 and/or 940 CMR 5.03 constitute independent violations of M.G.L. c. 93A.

As a result of Ford's unlawful acts and practices as set forth herein, Nasta and the putative class have suffered financial harm equal to, among other things, the difference between the value of the new vehicle and the cost of repairs. Alternatively, if repair is impossible, Nasta and the putative class have suffered financial harm equal to the full cost of the vehicle plus all added accessories and/or upgrades along with reasonable interest thereon.

Nasta asserts Class damages and Class Member identities and service history are readily ascertainable through a search of Ford's records, and therefore, Ford is required to make a class-wide tender in response to this demand.[6]

For the reasons stated herein, Nasta intends to file a putative class action against Ford seeking relief for himself and other similarly situated individuals arising from the unlawful practices described.

For purposes of this demand letter, the persons ("Class") for whom Nasta seeks relief are defined as follows:

---

[6] Hermida, et al. v. Archstone, 950 F.Supp.2d 298, 306 (2013) ("...when a putative class's damages are "reasonably ascertainable," a defendant's [M.G.L. c. 93A] settlement offer should redress not just the lead plaintiff's injury, but those of the entire putative class.") (internal citations omitted).

All persons who purchased a Ford Explorer from a dealer of the Ford Motor Company and whose vehicle possessed a manufacturer defect resulting in dents or defects in the vehicles' doors. Excluded from the class are all persons who had the doors successfully repaired and/or replaced or from whom Ford purchased back the vehicle.

Pursuant to M.G.L. c. 93A, § 9(3) Nasta now makes the following demand (for the full and final settlement of this claim on behalf of himself *and* the putative Class):

1. That Ford immediately notify all affected Ford Explorer purchasers in Massachusetts of the manufacturer defect described herein in accordance with 940 CMR 5.03(5);

2. That Ford agree to immediately issue payment to all Class Members in the amount of the cost to repair the vehicle's doors, or alternatively purchase back the vehicle for the amount paid (plus all accessories and upgrades purchased by the claimant, along with reasonable interest thereon);

3. That Ford issue payment for the loss of use of the vehicle for the length of time the vehicle was (or will be) out of the Class Members possession for repairs;

4. That Ford, in the event it chooses to repair the vehicles in question, issue payment to all Class Members to account for the vehicles' post-repair diminution in value; and

5. That Ford provide Nasta with an accounting of all claims related to the door defect, so that Nasta can ensure all members of the Class are adequately compensated and/or notified.

Should this monetary and injunctive demand be met, Nasta requests that Ford work diligently with Nasta's counsel and produce sufficient documentation through confirmatory discovery so that the parties may identify all Class Members.

Finally, Nasta demands that Ford agree to be wholly responsible for any costs associated with class-wide notification and administration of the claims of the putative class, as well as for the payment of reasonable costs and reasonable attorneys' fees.

As you are aware, Ford has thirty (30) days to respond to this demand letter. We look forward to receiving a timely response to this consumer protection act demand letter.

Please preserve the original of this correspondence for production at any hearing or trial which may later occur and which shall in part, involve this correspondence and its relationship to the statute in question.

*In addition, please be advised that Massachusetts law imposes a duty to preserve all evidence that may be relevant to a possible legal action. This duty applies to all materials, including electronically-stored information, which may be relevant to Nasta's claims as well as the claims of putative Class Members.*

We look forward to hearing from you or your counsel within thirty (30) days.

Very truly yours,

Brian P. McNiff, Esq.

Encl.

cc: Ford Motor Company – Office of Counsel

# EXHIBIT 1

Salem Ford-Hyundai
470 S. Broadway
Salem, NH 03079

To whom it may concern,

In late April Joseph Nasta brought his 2016 Explorer in ( VIN# IFM5K8HT6GGC52443) to have us look at a small crease in all four of his doors. I told him it looked like something that happened during the manufacturing process and that I would bring it to Ford's attention and see if we could get it resolved. I started the prior approval process with Ford Motor Co. I sent multiple sets of pictures and an explanation of what the issue was. Ford had me look at other 2016 Explorer's on the lot and all 2016's had the same marks, at the insistence of Mr. Nasta I pressed Ford for an approval to replace the doors. On May 20th I did get the approval. I ordered a set of doors and when they arrived they had the same crease in the same location. I then contacted Ford and had the doors inspected at the warehouse before they were shipped. Ford inspected and carefully packaged up a set of doors. When the doors arrived they all had the same crease. Some were better than others but the crease was still present to some degree in all the doors. At this point there is nothing more I can do as it looks like a manufacturing issue and every door I order is going to have the same problem. Any questions feel free to email me at ssmith@keyauto.com.

Sincerely,

Shane Smith

8/9/16

# EXHIBIT 2

From   Jessica DeKoekkoek
Subject   CAS-10227297
Date   Today at 12:51 PM
To   

Mr. Nasta;

This email is to annotate our conversation earlier today regarding your buy back request.

Your regular Customer Service Manager will be:

Lucy Rodriguez
866-631-3788 x 77754
Lridr175@ford.com

Thank you,

Jessica de Koekkoek
Customer Service Manager
Ford Motor Company
866/631-3788 x 77820

# EXHIBIT 3

Prior Approval Dealer Update                                        Page 1 of 2

---

## Interior / Exterior

**Request Form Summary**

VIN 1FM5K8HT6GGC53443
Vehicle Model 2016 EXPLORER
Repair Order Number 252185  (Edit This)
Repair Order Date May 19 2016  (Edit This)
Line Number of R.O. B  (Edit This)
Hotline Contact ID 110234609
Request Date May 20 2016 18:59:21
Request Status Conditional Approval - See Comments
Prior Approval Code PAAMJ
Repair Already Completed Request No

**Request Form Details**

1. Please describe customers concern.
   There is a deformity in the section of the door outlined in the pictures, looks like from the manufacturing process

2. What is the intended repair, list all components needed for repair?
   replace door shells.

3. Provide any additional details necessary.
   Please include any available technical information that you believe will help process your prior approval request.
   This is a brand new vehicle, all doors are going to have to be replaced front and rear. all doors have same issue. I have looked at many many explorers and have not seen this on any other vehicle. I am not sure if I need prior approval for this as the base part numbers did not come down in the drop box. base part numbers 7E24631,7E24630,7230124,7230125. Please advise..

Thank you
Shane Smith

**Comment History**

Comment From: Ford
Comment Date: May 20 2016 11:45:59
Hello Shane,

The close-up and additional images do not clearly show the concern. Please update this request with clear close-up images at different angles to help show the concern better.

In addition, please note that since the concern is on all 4 doors we will need overall images of each door and close-up images of each door labeled (LF, LR, RF, RR) to help show which image is being viewed in each close-up.

When attempting to capture clear close-up images, it is helpful to make sure the camera is not on close-up/macro mode (flower icon). While in close up/macro mode, holding the camera 12 - 18 inches away from the concern, utilizing the zoom and auto-focus features of the camera, will help capture a clear image. In some instances, it may be helpful to place a pointing device (pen, finger, sticky note, etc.) close to the concern and allow the camera to focus. Please also review the images before submitting the request. The concern must be clearly visible to make the most accurate warrantability determinations.

Comment From: DEALER
Comment Date: Jun 01 2016 13:44:43
This is very hard to depict in a picture,but the last pic of right rear shows both front and rear door well. They are creases.

Comment From: Ford
Comment Date: Jun 01 2016 13:53:17
Shane,

Thank you for the added images.

As these concerns are not related to obvious damage, the Front and Rear Doors (base part #ENTIRE) are warrantable under the New Vehicle Warranty.

**Additional Comments**
Nettet 1890 thousanousdwg -



By voluntarily providing your personally identifiable information (such as name, email, and mobile phone number) to us, you understand and consent to the collection, use, processing, transfer, and disclosure of this information globally   including by Ford in the United States and by Ford affiliates and their service providers. Your consent shall be deemed to include your consent to transfer the information to locations that may have different levels of privacy protection than in your country.

© Copyright 2016. Ford Motor Company. All rights reserved

# EXHIBIT 4

From   **Lucy Rodriguez**
Subject   Ford Regional Customer Service Division I CAS-10227297 CRM:06107000000731
Date   Today at 4:36 PM
To

Good afternoon,

In summary of our conversation, Ford will not be meeting your request for a replacement vehicle or repurchase. All communication between Ford Motor Company and its dealers are proprietary and as such, I am unable to provide copies of the requests. However, my contact information is below for your reference.

Regards,

**Ford Motor Company ®**
*Lucy Rodriguez | Customer Service Manager | FCSD*
866-6313788 x 77764 | eFax: 321-435-1025
krodr175@ford.com   www.ford.com



# EXHIBIT 5

**COMMONWEALTH AUTO BODY**
335 LEE BURBANK HWY
REVERE, MA 02151
PHONE: (781) 289-2400

**\*\*\* PRELIMINARY ESTIMATE \*\*\***

08/23/2016 12:19 PM

## Owner

**Owner:** Joseph Nasta

## Inspection

**Inspection Date:** 08/23/2016 12:19 PM

**Company:** Commonwealth Auto Body
**Contact:** Daniel Sica
**Address:** 335 Lee Burbank Hwy
**City State Zip:** Revere, MA 02151
**Email:** comm260@aol.com

**Inspection Type:**

**Appraiser License # :** 15004

**Work/Day:** (781)289-2400
**FAX:**

## Repairer

**Repairer:** Commonwealth Auto Body Inc.
**Address:** 335 Lee Burbank Hwy

**City State Zip:** Revere, MA 02151
**Email:** Commonwealthautobody@gmail.com
**License # :** 2423

**Target Complete Date/Time:**

**Contact:**
**Work/Day:** (781)289-2400
**FAX:** (781)289-3387
**Work/Day:**

**Regulation ID:**

**Days To Repair:** 17

## Vehicle

2016 Ford Explorer Platinum 4 DR Wagon
6cyl Gasoline Turbo 3.5
6-Speed Automatic

**Lic.Plate:**
**Lic.Expire:**
**Veh Insp# :**
**Condition:**
**Ext. Color:** ABSOLUTE BLACK
**Ext. Refinish:** Two-Stage
**Ext. Paint Code:** G1

**Lic State:** MA
**VIN:** 1FM5K8HT6GGC52443
**Mileage Type:** Actual
**Code:** P8473G
**Int. Color:**
**Int. Refinish:**
**Int. Trim Code:**

## Options

| | | |
|---|---|---|
| 1st Row LCD Monitor(s) | 2nd Row Head Airbags | 3rd Row Head Airbags |
| 4-Wheel Drive | AM/FM CD Player | Adaptive Cruise Control |
| Alarm System | Aluminum Trim | Aluminum/Alloy Wheels |
| Anti-Lock Brakes | Auto Dimming Ext Mirrors | Auto Headlamp Control |
| Auto Locking Hubs (4WD) | Automatic Dimming Mirror | Automatic High Beam |
| Auxiliary Audio Input | Blind Spot Sensor | Cargo/Trunk Net |
| Center Console | Chrome Grille | Chrome Trim |
| Daytime Running Lights | Digital Signal Processor | Driver Information Sys |
| Dual Air Conditioning | Dual Airbags | Dual Power Seats |

2016 Ford Explorer Platinum 4 DR Wagon
Claim # :                                                                                          08/23/2016 12:19 PM

| | |
|---|---|
| Dual Zone Auto A/C | Electric Steering |
| Emergency S.O.S. System | Ext Mirror Turn Signals |
| Garage Door Opener | Head Airbags |
| Heated Power Mirrors | Heated Rear Window Wiper |
| High Definition Radio | Illuminated Visor Mirror |
| Keyless Entry Keypad | Keyless Entry System |
| LED Brakelights | LED Headlamps |
| Leather Seats | Leather Shift Knob |
| Lighted Entry System | MP3 Decoder |
| Mirror(s) Memory | Navigation System |
| Panorama Roof W/Pwr Mnrf | Parking Assist System |
| Power Adjustable Pedals | Power Door Locks |
| Power Windows | Privacy Glass |
| Pwr Folding Ext Mirrors | Pwr Tilt/Tele. Str Wheel |
| Rear Collsn Mitigation | Rear Heater |
| Rear View Camera | Rear Window Defroster |
| Remote Starter | Reverse Sensing System |
| Side Airbags | SiriusXM Satellite Radio |
| Strg Wheel Radio Control | Tachometer |
| Tire Pressure Monitor | Touch Screen Display |
| Trailer Hitch | Trip Computer |
| Wireless Audio Streaming | Wireless Phone Connect |

Electronic Transfer Case
Fog Lights
Heated Frnt & Rear Seats
Heated Steering Wheel
Intermittent Wipers
Keyless Ignition System
Lane Departure Alert
Leather/Wood Steer Wheel
Memory Seats
Overhead Console
Passenger Knee Airbag
Power Liftgate
Pwr Driver Lumbar Supp
Rain-Sensing W/S Wipers
Rear Spoiler
Rear Window Wiper/Washer
Roof Rails
Split Folding Rear Seat
Theft Deterrent System
Traction Control System
Ventilated Front Seat(s)
Wood Interior Trim

**Damages**

| Line | Op | Guide | MC | Description | MFR.Part No. | Price | ADJ% B% | Hours | R |
|---|---|---|---|---|---|---|---|---|---|
| **Unibody/Frame** | | | | | | | | | |
| 1 | I | M00 | | mask jamb | Repair | | | 1.0* | SM |
| **Stripes And Mouldings** | | | | | | | | | |
| 2 | RI | 1037 | | Flare,Wheel Opening LT | R & I Assembly | | | INC | SM |
| 3 | RI | 1038 | | Flare,Wheel Opening RT | R & I Assembly | | | INC | SM |
| 4 | RI | 1201 | | Flare,Wheel Opening LT | R & I Assembly | | | INC | SM |
| 5 | RI | 1202 | | Flare,Wheel Opening RT | R & I Assembly | | | INC | SM |
| **Front Bumper** | | | | | | | | | |
| 6 | RI | 23 | | Front Bumper Cover R&I | R & I Assembly | | | 2.4 | SM |
| **Front End Panel And Lamps** | | | | | | | | | |
| 7 | RI | 71 | | Lens,Headlamp LT | R & I Assembly | | | 0.5 | SM |
| 8 | RI | 72 | | Lens,Headlamp RT | R & I Assembly | | | 0.5 | SM |
| **Front Body And Windshield** | | | | | | | | | |
| 9 | BR | 103 | 13 | Fender,Front LT | Blend Refinish | | | 2.1 | RF |
| | | | | | 1.0  Blend | | | | |
| | | | | | 0.6  Two-stage setup | | | | |
| | | | | | 0.5  Two-stage | | | | |
| 10 | BR | 104 | | Fender,Front RT | Blend Refinish | | | 1.3 | RF |
| | | | | | 0.9  Blend | | | | |
| | | | | | 0.4  Two-stage | | | | |
| 11 | RI | 180 | | Grille,Upper Cowl | R & I Assembly | | | 0.5 | SM |
| **Front Body Interior Sheetmetal** | | | | | | | | | |
| 12 | RI | 545 | | Shield,Front Splash LT | R & I Assembly | | | INC | SM |
| 13 | RI | 546 | | Shield,Front Splash RT | R & I Assembly | | | INC | SM |
| **Roof** | | | | | | | | | |
| 14 | RI | 1485 | | Mldg,Roof Drip LT | R & I Assembly | | | 0.2 | SM |

2018 Ford Explorer Platinum 4 DR Wagon
Claim #

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 15 | RI | 1486 | Mldg,Roof Drip RT | R & I Assembly | | | A |
| 16 | RI | 1352 | Rail,Luggage Rack LT | R & I Assembly | | | M |
| 17 | RI | 1353 | Rail,Luggage Rack RT | R & I Assembly | | | M |

**Front Doors**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 18 | E | 207 | Door Shell,Front LT | FB5Z7820125A | $1,235.37 | | SM |
| 19 | L | 207 | Door Shell,Front LT | Refinish | | 4.0 | RF |
| | | | | 2.5  Surface | | | |
| | | | | 1.0  Edge | | | |
| | | | | 0.5  Two-stage | | | |
| 20 | E | 208 | Door Shell,Front RT | FB5Z7820124A | $1,206.85 | INC | SM |
| 21 | L | 208 | Door Shell,Front RT | Refinish | | 3.0 | RF |
| | | | | 2.5  Surface | | | |
| | | | | 0.5  Two-stage | | | |
| 22 | L | 243 | Frt Door Edge/Jamb LT | Refinish | | INC | |
| 23 | L | 244 | Frt Door Edge/Jamb RT | Refinish | | 0.5 | RF |
| | | | | 0.5  Surface | | | |

**Rear Doors**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 24 | E | 287 | Door Shell,Rear LT | FB5Z7824631A | $1,128.15 | 5.6 | SM |
| 25 | L | 287 | Door Shell,Rear LT | Refinish | | 3.2 | RF |
| | | | | 2.2  Surface | | | |
| | | | | 1.0  Edge | | | |
| | | | | INC  Two-stage | | | |
| 26 | E | 288 | Door Shell,Rear RT | FB5Z7824630A | $1,140.30 | 5.6 | SM |
| 27 | L | 288 | Door Shell,Rear RT | Refinish | | 3.2 | RF |
| | | | | 2.2  Surface | | | |
| | | | | 1.0  Edge | | | |
| | | | | INC  Two-stage | | | |

**Quarter And Rocker Panel**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 28 | BR | 570 | Panel,Bodyside Otr Upr LT | Blend Refinish | | 0.7 | RF |
| | | | | 0.7  Blend | | | |
| | | | | INC  Two-stage | | | |
| 29 | BR | 571 | Panel,Bodyside Otr Upr RT | Blend Refinish | | 0.7 | RF |
| | | | | 0.7  Blend | | | |
| | | | | INC  Two-stage | | | |
| 30 | BR | 389 | Panel,Quarter LT | Blend Refinish | | 1.2 | RF |
| | | | | 1.2  Blend | | | |
| | | | | INC  Two-stage | | | |
| 31 | BR | 390 | Panel,Quarter RT | Blend Refinish | | 1.2 | RF |
| | | | | 1.2  Blend | | | |
| | | | | INC  Two-stage | | | |
| 32 | RI | 397 | Door,Fuel Filler RT | R & I Assembly | | 0.3 | SM |
| 33 | RI | 391 | Applique,Qtr Panel LT | R & I Assembly | | 2.6 | SM |
| 34 | RI | 392 | Applique,Qtr Panel RT | R & I Assembly | | 2.6 | SM |
| 35 | RI | 395 | Qtr Glass R & I LT | R & I Assembly | | INC | SM |
| 36 | RI | 396 | Qtr Glass R & I RT | R & I Assembly | | INC | SM |
| 37 | EC | 434 | Sealant Kit,Qtr Glass LT | Replace Economy | $30.00* | 0.0* | SM |
| 38 | EC | 435 | Sealant Kit,Qtr Glass RT | Replace Economy | $30.00* | 0.0* | SM |

**Inner Quarter & Panels**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 39 | RI | 299 | Shield,Quarter Panel LT | R & I Assembly | | 0.3 | SM |
| 40 | RI | 300 | Shield,Quarter Panel RT | R & I Assembly | | 0.3 | SM |

**Rear Bumper**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 41 | N | 519 | Rear Bumper Cover R&I | Additional Labor | | 1.8 | SM |

**Rear Body, Lamps And Floor Pan**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 42 | RI | 533 | Taillamp Assembly LT | R & I Assembly | | INC | SM |
| 43 | RI | 534 | Taillamp Assembly RT | R & I Assembly | | INC | SM |

**Manual Entries**

2016 Ford Explorer Platinum 4 DR Wagon
Claim # :                                                                                                                                    06/23/2016 12:19 PM

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 44 | EC | M14 | Corrosion Protection | Replace Economy | $25.00* | 0.5* | RF |
| 45 | EC | M17 | Cover Car Exterior | Replace Economy | $5.00* | 0.3* | RF |
| 46 | I | M58 | Clean For Delivery | Repair | | 1.0* | SM |
| 47 | EC | M60 | Hazardous Waste Removal | Replace Economy | $15.00* | | SM |
| 48 | L | M66 | Color Sand And Buff | Refinish | | 6.0* | RF |
| 49 | E | | Clear Bra | Replace OEM | $899.00* | | SM* |
| 49 | Items | | | | | | |

| MC | Message |
|---|---|
| 13 | INCLUDES 0.6 HOURS FIRST PANEL TWO-STAGE ALLOWANCE |

### Estimate Total & Entries

| | | | |
|---|---|---|---|
| Gross Parts | | | $5,609.67 |
| Other Parts | | | $105.00 |
| Paint & Materials | 27.9 Hours @ $25.00 | | $697.50 |
| Parts & Material Total | | | $6,412.17 |
| Tax on Parts & Material | @ 6.250% | | $400.76 |

| Labor | Rate | Replace Hrs | Repair Hrs | Total Hrs | |
|---|---|---|---|---|---|
| Sheet Metal (SM) | $40.00 | 22.8 | 3.8 | 26.6 | $1,064.00 |
| Mech/Elec (ME) | $40.00 | | | | |
| Frame (FR) | $45.00 | | | | |
| Refinish (RF) | $40.00 | 27.9 | | 27.9 | $1,116.00 |
| Labor Total | | | | 54.5 Hours | $2,180.00 |
| Gross Total | | | | | $8,992.93 |
| Net Total | | | | | $8,992.93 |

Alternate Parts Y/00/00/00/00/00 CUM 00/00/00/00/00 Zip Code: 02151 Default
Rate Name Default

Audatex Estimating 8.0.035 ES 06/23/2016 12:28 PM REL 8.0.035 DT 06/01/2016 DB 06/15/2016
© 2016 Audatex North America, Inc.

**2.5 HRS WERE ADDED TO THIS ESTIMATE BASED ON AUDATEX'S TWO-STAGE REFINISH FORMULA.**
~~ESTIMATE CALCULATED USING THE 2.5 HOUR MAXIMUM ALLOWANCE FOR TWO-STAGE REFINISH OF NON-FLEX, EXTERIOR~~
~~SURFACES.~~

### Op Codes

| | | |
|---|---|---|
| * = User-Entered Value | ^ = Labor Matches System Assigned Rates | E = Replace OEM |
| NG = Replace NAGS | EC = Replace Economy | OE = Replace PXN OE Srpls |
| UE = Replace OE Surplus | ET = Partial Replace Labor | EP = Replace PXN |
| EU = Replace Recycled | TE = Partial Replace Price | PM = Replace PXN Reman/Rebit |
| UM = Replace Reman/Rebuilt | L = Refinish | PC = Replace PXN Reconditioned |
| UC = Replace Reconditioned | TT = Two-Tone | SB = Sublet Repair |
| N = Additional Labor | BR = Blend Refinish | I = Repair |

2016 Ford Explorer Platinum 4 DR Wagon
Claim # :

08/23/2016 12:19 PM

IT  = Partial Repair                    CG = Chipguard                    RI  = R & I Assembly
P   = Check                             AA = Appearance Allowance         RP = Related Prior Damage



This report contains proprietary information of Audatex and may not be disclosed to any third party (other than the insured, claimant and others on a need to know basis in order to effectuate the claims process) without Audatex's prior written consent.

© 2016 Audatex North America, Inc.
AUDATEX is a trademark owned by Audatex North America, Inc. All rights reserved.

Solera

2

| CIVIL ACTION COVER SHEET | DOCKET NUMBER 16·3640 H | Trial Court of Massachusetts The Superior Court |
|---|---|---|

| PLAINTIFF(S): | Joseph Nasta | COUNTY |
|---|---|---|

ADDRESS:

Suffolk ▼

DEFENDANT(S):   Ford Motor Company

| ATTORNEY: | Kevin J. McCullough, Esq. |
|---|---|

ADDRESS:   Forrest, LaMothe, Mazow, McCullough, Yasi & Yasi, P.C.

ADDRESS:   155 Federal Street, Suite 700

2 Salem Green, Suite 2

Boston, MA

Salem, MA 01970

BBO:   644480

## TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| A99 | Class action for violation of consumer laws | F | ☒ YES   ☐ NO |

*If "Other" please describe:

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
    1. Total hospital expenses .....................
    2. Total doctor expenses .....................
    3. Total chiropractic expenses .....................
    4. Total physical therapy expenses .....................
    5. Total other expenses (describe below) .....................
        Subtotal (A): $

B. Documented lost wages and compensation to date ..................... $
C. Documented property damages to dated ..................... $
D. Reasonably anticipated future medical and hospital expenses ..................... $
E. Reasonably anticipated lost wages ..................... $
F. Other documented items of damages (describe below) ..................... $

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

TOTAL (A-F):$

### CONTRACT CLAIMS
(attach additional sheets as necessary)

Provide a detailed description of claims(s):

Ford breached its contract and violated consumer protection laws when it failed to provide Nasta with a new Ford Explorer,

Ford also violated consumer protection laws by failing to notify Nasta of the breach.

TOTAL: $   3,500,000.00

Signature of Attorney/Pro Se Plaintiff: X   Date: 11/31/16

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

## CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney of Record: X   Date: 11/31/16

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE

2016 NOV 25 P 1:36

SUFFOLK SUPERIOR COURT
CIVIL CLERK'S OFFICE

**Commonwealth of Massachusetts**
**County of Suffolk**
**The Superior Court**

CIVIL DOCKET#: **SUCV2016-03640-BLS2**

Case: Nasta v. Ford Motor Co.

## NOTICE OF TRANSFER TO
## BUSINESS LITIGATION SESSION

Upon review, the court orders this case transferred to the Business Litigation Session (BLS) and assigned to **BLS2**.  In the future, all parties must include the initials "BLS2" at the end of the docket number on all filings, as shown above.

Counsel shall discuss with their clients and with opposing counsel whether the parties will participate in the BLS Discovery Project (counsel are directed to http://www.mass.gov/courts/court-info/trial-court/sc/sc-bls-gen.html for more information on the Project).  Counsel may indicate their respective client's participation by completing, filing and serving the attached form.

Dated: ___12/5/16___

_Janet L. Sanders_
Janet L. Sanders
Justice of the Superior Court &
Administrative Justice of the Business Litigation Session

# Commonwealth of Massachusetts
## County of Suffolk
## The Superior Court

CIVIL DOCKET#: _____

Case: _____

As you may know, the Business Litigation Session began implementing a Discovery Project in January, 2010. This project is available on a voluntary basis for all new cases accepted into the BLS and for cases which have not previously had an initial case management conference.  Counsel should be prepared to discuss the project with the Court at the initial case management conference.  For a detailed copy of the BLS Discovery Project, counsel are directed to the Trial Court home page at: http://www.mass.gov/courts/court-info/trial-court/sc/sc-bls-gen.html)

If a party is willing to participate in the project, that party's counsel should so indicate below and return this form to the appropriate session clerk.

☐ **Yes,**_____ is willing to participate in the Discovery Project.
(Party's Name)

Case Name _____

Docket Number CIVIL DOCKET#: _____

Counsel For_____         Date_____

Firm Name and Address:

_____

_____

_____

Please complete this form and return it to:

Helen Foley, Asst. Clerk      **OR**      Richard V. Muscato, Jr., Asst. Clerk
BLS1, Room 1309                            BLS2, Room 1017
3 Pemberton Square                        3 Pemberton Square
Boston, MA 02108                          Boston, MA 02108

**4.**

# Commonwealth of Massachusetts

SUFFOLK, ss.



SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. 16-3640H

JOSEPH NASTA, on behalf of himself
and all others similarly situated , Plaintiff(s)

v.

FORD MOTOR COMPANY , Defendant(s)

## SUMMONS

To the above-named Defendant:

You are hereby summoned and required to serve upon ___Kevin J. McCullough, Esq.___

plaintiff's attorney, whose address is __2 Salem Green, Salem, MA  01970__ , an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Judith Fabricant, Esquire, at Boston, the ___twenty-ninth___ day of ___November___ , in the year of our Lord two thousand ___sixteen___ .

*Michael Joseph Donovan*

Clerk/Magistrate

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.
3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED
     (1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM CIV. P.1 10M—5/16

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

## PROOF OF SERVICE OF PROCESS



**Suffolk County Sheriff's Department** • 132 Portland Street, Boston, MA 02114 • (617) 704-6999

*Suffolk, ss.*

December 21, 2016

I hereby certify and return that on 12/15/2016 at 2:00 PM I served a true and attested copy of the Summons, Complaint, Cover Sheet, and Exhibits in this action in the following manner: To wit, by delivering in hand to Gail Brown, Process Clerk, agent and person in charge at the time of service for Ford Motor Company, at CT Corporation Systems 155 Federal Street Suite 700 Boston, MA 02110 . Attest/Copies ($5.00) Postage and Handling ($1.00) Travel ($1.00) Basic Service Fee (IH) ($30.00) Total: $37.00

Deputy Sheriff   John Cotter

*Deputy Sheriff*

, 201  .

**Commonwealth of Massachusetts**

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION
No. _____

_____ , Plff(s).

v.

_____ , Deft(s).

SUMMONS
(Mass. R. Civ. P. 4)

(AFFIX FILING STAMP HERE)